Bob BRIGHTWELL, Appellant

v.

Joseph LEHMAN, in his official capacity as the Commissioner of Pennsylvania Department of Corrections; Raymond Sobina, in his official capacity as the Superintendent of the State Correctional Institution at Somerset; Sylvia Gibson, in her official capacity as Deputy Superintendent for Centralized Services of the State Correctional Institution at Somerset; Gerald Rozum, in his official capacity as Acting Deputy Superintendent for Facilities Management of the State Correctional Institution at Somerset; Daniel Gehlmann, in his official capacity as Major of Unit Management of the State Correctional Institution at Somerset; Leo Glass, in his official capacity as Captain of Inmate Receiving Committee (I.R.C.) of the State Correctional Institution at Somerset; Jeffrey Beard, Ph.D., in his official capacity as the Secretary of the Pennsylvania Department of Corrections; Edward Klem, in his official capacity as Superintendent of the State Correctional Institution at Mahanoy; Kenneth G. Chmielewski, in his individual and official capacity as the Deputy Superintendent for Centralized Services at the State Correctional Institution at Mahanoy; Marva Cerullo, in her individual and official capacity as the Corrections Health Care Administrator at the State Correctional Institution at Mahanoy; Joseph Rush, in his individual and official capacity as a Physician's Assistant of the State Correctional Institution at Mahanoy; Dr. Fred Maue, in his individual and official capacity as Chief of Clinical Services, Bureau of Health Care Services, for the Pennsylvania Department of Corrections.

No. 07–3917.

United States Court of Appeals, Third Circuit.

Argued Oct. 19, 2010.

Filed: Feb. 9, 2011.

Michael Nonaka [Argued], Skye L. Perryman, Covington & Burling, Washington, DC, for Appellant.

Kemal A. Mericli [Argued], Office of Attorney General of Pennsylvania, Pittsburgh, PA, Claudia M. Tesoro, Office of Attorney General of Pennsylvania, Philadelphia, PA, for Appellees, Lehman, Sobina, Gibson, Rozum, Gehlmann, Glass, Beard, Klem, Chmielewski, Cerullo and Maue.

Kathryn M. Kenyon [Argued], Pietragallo, Gordon, Alfano, Bosick & Raspanti, Pittsburgh, PA, for Appellee, Rush.

Before: HARDIMAN, GREENAWAY, JR. and NYGAARD, Circuit Judges.

## OPINION OF THE COURT

HARDIMAN, Circuit Judge.

In this appeal we consider whether a prisoner who has been denied *in forma pauperis* status because he has "three strikes" under 28 U.S.C. § 1915(g) is precluded from obtaining counsel pursuant to § 1915(e)(1). We hold that he is.

## I

### A

Bob Brightwell was sentenced to life in prison for a robbery and murder he committed in 1975. Since 1977, Brightwell has been housed in various Pennsylvania State Correctional Institutions (SCIs), including SCI–Somerset from May 2003 through January 2004, SCI–Mahanoy from May 2004 through November 2006, and SCI–Houtzdale, where he currently resides.

Brightwell claims to suffer from serious medical conditions and has long maintained that prison officials have been deliberately indifferent to his medical needs. His allegedly unattended-to conditions include: diabetes, a skin condition called keratosis pilaris, extreme liver and kidney pain, blurred vision, and severe "imploding-type" migraines caused by "a capsule" mistakenly left in his right eye during a botched cataract surgery in 1999.[1] According to Brightwell, these conditions required the following accommodations: a diabetic diet, Keri brand skin lotion, a sufficiently warm temperature in his prison cell, and remedial eye surgery. In the months before he filed an amended complaint in this case, Brightwell sought the

---

1. Brightwell contends that on October 21, 1999, while undergoing routine cataract surgery, his anesthesia wore off and he awoke in excruciating pain, which caused him to thrash about. He claims that in their haste to finish the surgery, doctors administered no additional anesthesia, placed him in restraints to stop his movement, and then accidentally left "a capsule" inside his right eye. It is not clear from the record whether "capsule" refers to a foreign object or to the "capsule of the lens," which is a natural part of the human eye. *See* HENRY GRAY, F.R.S., GRAY's ANATOMY 821 (T. Pickering Pick, F.R.C.S. & Robert Howden, M.A., M.B., C.M., eds., 15th ed. 1995) ("The *capsule of the lens* is a transparent, highly elastic, and brittle membrane, which closely surrounds the lens." (italics in original)).

aforementioned accommodations through sick call requests, grievances, and letters to Department of Corrections (DOC) officials. All of these entreaties were denied based on the DOC's determination that Brightwell's conditions of confinement and medical care were adequate.

Brightwell also claims that on May 7, 2004, he suffered from diabetic shock and that a physician's assistant who was in the room at the time failed to assist him. The next day, Brightwell filed a grievance alleging "unethical conduct by a member of [the staff]." Three weeks later, a prison administrator signed a misconduct report charging Brightwell with lying about the incident. The misconduct charge was later dismissed without any sanction against Brightwell.

B

On September 16, 2004, Brightwell filed an amended complaint against a number of prison officials and employees alleging: (1) breach of contract, (2) a due process violation relating to his prior placement in administrative custody, (3) violations of the International Covenant on Civil and Political Rights and the Convention Against Torture, (4) a violation of his First Amendment rights in the form of a retaliatory misconduct report levied against him for

filing a grievance following the May 2004 diabetic shock incident, and (5) violations of 42 U.S.C. § 1983 and the Eighth Amendment for deliberate indifference to his serious medical needs.[2] He sought compensatory and punitive damages and an order compelling Defendants to remedy the defects in his medical care. In April 2006, the District Court granted in part Defendants' motions to dismiss under Federal Rule of Civil Procedure 12(b)(6), allowing only Brightwell's Eighth Amendment deliberate indifference and First Amendment retaliation claims to move forward.[3]

While his case was pending, Brightwell filed a motion for leave to proceed *in forma pauperis* under 28 U.S.C. § 1915 and three motions for the appointment of counsel under § 1915(e)(1). On March 23, 2004, Magistrate Judge Ila Jeanne Sensenich entered orders denying Brightwell's motion for leave to proceed *in forma pauperis* and his first motion for the appointment of counsel. The latter order was a handwritten notation at the top of the motion which stated: "Motion denied for reasons given in report and recommendation dated 10/30/2003."

The October 30, 2003 Report and Recommendation to which Magistrate Judge Sensenich made reference explained that Brightwell was ineligible for *in forma pau-*

---

**2.** Brightwell's initial complaint was filed on September 11, 2003, and alleged that he was wrongfully held in administrative custody. That issue became moot in May 2004 when Brightwell was moved into the general population at SCI–Mahanoy. Brightwell's amended complaint named as defendants, in their individual and official capacities: DOC Commissioner Joseph Lehman, DOC Secretary Jeffrey Beard, Superintendent of SCI–Somerset Raymond Sobina, Deputy Superintendent for Centralized Services of SCI–Somerset Sylvia Gibson, Acting Deputy Superintendent for Facilities Management of SCI–Somerset Gerald Rozum, Major of Unit Management of SCI–Somerset Daniel Gehlmann, Captain of

the Inmate Receiving Committee of SCI–Somerset Leo Glass, Superintendent of SCI–Mahanoy Edward Klem, Deputy Superintendent for Centralized Services of SCI–Mahanoy Kenneth Chmielewski, Corrections Health Care Administrator at SCI–Mahanoy Marva Cerullo, DOC Chief of Clinical Services at the Bureau of Health Care Services Dr. Fred Maue, and Physician's Assistant of SCI–Mahanoy Joseph Rush.

**3.** One of Brightwell's Eighth Amendment claims—that Defendants were deliberately indifferent to his need for Keri skin lotion to treat his keratosis pilaris—was also dismissed.

*peris* status because his history of filing frivolous suits triggered the "three strikes" provision of the Prison Litigation Reform Act (PLRA), 28 U.S.C. § 1915(g). Magistrate Judge Sensenich's docket review indicated that as of October 2003, Brightwell had filed seventeen actions in Pennsylvania district courts. She aptly described him as "a litigious prisoner" whose motion to proceed *in forma pauperis* had to be denied under the PLRA.

On May 3, 2006, Brightwell filed another motion requesting counsel. This motion was denied by Magistrate Judge Lisa Pupo Lenihan, who emphasized two considerations: (1) the scarcity of *pro bono* counsel and (2) her willingness to revisit the issue if the case proceeded to trial. Brightwell appealed the decision to deny him counsel, but United States District Judge Kim R. Gibson affirmed Magistrate Judge Lenihan's order. On October 26, 2006, Brightwell again moved for the appointment of counsel, and Magistrate Judge Lenihan denied the motion for the same reasons articulated in her previous denial.

On November 30, 2006, Defendants filed a motion for summary judgment. Magistrate Judge Lenihan issued a Report and Recommendation finding in Defendants' favor, and on August 29, 2007, Judge Gibson adopted the Report and Recommendation, granting summary judgment. Brightwell filed this timely appeal.[4]

## II

Brightwell presents three claims of error for our consideration. First, he contends the District Court erred in denying his motions for appointment of counsel pursuant to 28 U.S.C. § 1915(e)(1). Second, he argues that the District Court should not have ruled on the motions for summary judgment because he was given inadequate notice and opportunity to reply. Finally, he maintains that disputed issues of material fact precluded summary judgment. We address each of these arguments in turn.

### A

 Ordinarily, we review the District Court's denial of an inmate's request for appointment of counsel for abuse of discretion. *Tabron v. Grace*, 6 F.3d 147, 155 n. 3, 158 (3d Cir.1993). In this case, however, whether Brightwell's "three strikes" statutorily preclude him from obtaining counsel pursuant to § 1915(e)(1) is a purely legal question, so our review is plenary. *See United States v. Hull*, 456 F.3d 133, 137 (3d Cir.2006). We may affirm a district court for any reason supported by the record. *United States v. Agnew*, 407 F.3d 193, 196 (3d Cir.2005) (citing *United States v. Jasin*, 280 F.3d 355, 362 (3d Cir.), *cert. denied* 537 U.S. 947, 123 S.Ct. 410, 154 L.Ed.2d 290 (2002)).

Brightwell requested counsel pursuant to 28 U.S.C. § 1915 ("Proceeding *In Forma Pauperis*"), which not only enables indigent litigants to bring lawsuits without paying filing fees, but also allows for representation by *pro bono* counsel "requested" by the court.[5] Section 1915(e)(1)

---

**4.** The District Court had jurisdiction under 28 U.S.C. §§ 1331 and 1343 because Brightwell's amended complaint raised federal questions and alleged civil rights violations. We review the final order of the District Court pursuant to 28 U.S.C. § 1291.

**5.** The Supreme Court held in *Mallard v. United States Dist. Court for the S. Dist. of Iowa*

that § 1915(d)—now recodified at § 1915(e)(1)—"allow[s] courts to ask but not compel lawyers to represent indigent litigants." 490 U.S. 296, 307, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989). As the Court noted, such requests "are ... not to be ignored" and "confront a lawyer with an important ethical decision." *Id.* at 308, 109 S.Ct. 1814. Be-

authorizes district courts to "request an attorney to represent any person unable to afford counsel" and, as we stated in *Tabron*, "gives district courts broad discretion to request an attorney to represent an indigent civil litigant[,] [even though] [s]uch litigants have no statutory right to appointed counsel." 6 F.3d at 153, 156–58 (listing factors to consider when deciding whether to appoint counsel).

In this case, Magistrate Judge Sensenich denied Brightwell's motion for leave to proceed *in forma pauperis* pursuant to the "three strikes" rule of § 1915(g), which states:

> In no event shall a prisoner bring a civil action or appeal a judgment in a civil action or proceeding under this section if the prisoner has, on 3 or more prior occasions, while incarcerated or detained in any facility, brought an action or appeal in a court of the United States that was dismissed on the grounds that it is frivolous, malicious, or fails to state a claim upon which relief may be granted, unless the prisoner is under imminent danger of serious physical injury.

§ 1915(g). The plain text of subsection (g) indicates that, in the absence of imminent danger of serious physical injury, a litigant with a history of filing frivolous, malicious, or patently unmeritorious claims cannot "bring a civil action ... under this section," which refers to § 1915. *See Koons Buick Pontiac GMC, Inc. v. Nigh*, 543 U.S. 50, 60–61, 125 S.Ct. 460, 160 L.Ed.2d 389 (2004) (explaining how legislation is divided with each "section" containing sub-

sections, paragraphs, subparagraphs, and clauses). Because Brightwell was barred from proceeding under § 1915, he was not entitled to any of the benefits that accrue to one who proceeds *in forma pauperis*. Accordingly, we hold that Brightwell was statutorily precluded from obtaining counsel pursuant to § 1915(e)(1).

Our holding comports with the "principal purpose" of the Prison Litigation Reform Act (PLRA), which was to " 'deter[ ] frivolous prisoner litigation by instituting economic costs for prisoners wishing to file civil claims.' " *Hernandez v. Kalinowski*, 146 F.3d 196, 200 (3d Cir.1998) (quoting *Lyon v. Krol*, 127 F.3d 763, 764 (8th Cir. 1997)); *see also Abdul–Akbar v. McKelvie*, 239 F.3d 307, 312 (3d Cir.2001) ("In enacting the PLRA, Congress concluded that the large number of meritless prisoner claims was caused by the fact that prisoners easily obtained I.F.P. status and hence were not subject to the same economic disincentives to filing meritless cases that face other civil litigants." (citations omitted)). Allowing a litigant who was denied *in forma pauperis* status pursuant to § 1915(g) to obtain counsel under § 1915(e)(1) would thus contradict both the text of § 1915 and the principal purpose of the PLRA.

In light of Brightwell's ineligibility for the appointment of counsel under § 1915, it was unnecessary for the District Court to analyze the *Tabron* factors. Nevertheless, it did not abuse its discretion by denying Brightwell's motions for the appointment of counsel.[6]

---

cause most attorneys likely treat such "requests" as de facto appointments and because we are more familiar with the notion of court-"appointed" than court-"requested" counsel, we refer throughout this opinion to attorneys obtained under § 1915 as "appointed." The distinction is immaterial to our decision.

**6.** We note, as we did in *Abdul–Akbar*, 239 F.3d 307, that the "three strikes" rule does not bar access to the courts or counsel. Prisoner litigants are free to seek counsel—whether pro bono or compensated—on their own. Moreover, although a district court may "have inherent authority to order attorneys to represent litigants without pay," *Mallard v.*

### B

Having decided that Brightwell was precluded from obtaining counsel as an *in forma pauperis* litigant, we turn to his claims that the District Court committed procedural and substantive errors when it entered summary judgment against him.

### 1

■ We begin by considering whether Brightwell received adequate notice and an opportunity to respond to Appellees' motions for summary judgment. Because Brightwell raised this issue in his first challenge to summary judgment, we review *de novo* the District Court's implicit finding that procedural requirements were met. *See Love v. Nat'l Med. Enters.*, 230 F.3d 765, 771 (5th Cir.2000) (noting that the standard of review is plain error only when the challenging party fails to raise the procedural argument in an earlier Rule 59(e) motion for reconsideration).

Although "[a] district court may not enter summary judgment against a party without affording that party notice and an opportunity to respond," *Trabal v. Wells Fargo Armored Serv. Corp.*, 269 F.3d 243, 249 n. 3 (3d Cir.2001), a court can cure defective service by exercising its "discretion to extend any applicable response period pertaining to the served paper," *Russell v. City of Milwaukee*, 338 F.3d 662, 667 (7th Cir.2003) (quoting 1 JAMES WM.

MOORE ET AL., MOORE'S FEDERAL PRACTICE § 5.04[2][a][ii] at 5–29 to 5–30 (3d ed.)).

Even accepting as true Brightwell's claim that mail delivery was unreliable around the time of his transfer from SCI–Mahanoy to SCI–Houtzdale, the District Court nevertheless gave him a full and fair opportunity to respond when it granted two extensions of time to file responsive pleadings and ordered that all summary judgment-related filings be resent to SCI–Houtzdale. Because Brightwell does not claim that he failed to receive the District Court's shipment of documents, he was not deprived of a full and fair opportunity to respond to the summary judgment motions. Accordingly, the District Court committed no procedural error.

### 2

■ We turn next to the merits of the District Court's summary judgment. Because Brightwell failed to object to the Report and Recommendation—which explicitly stated that failure to object "may constitute a waiver of any appellate rights"—we review the District Court's grant of summary judgment for plain error.[7] *Nara v. Frank*, 488 F.3d 187, 194 (3d Cir.2007). We apply the same standard as the District Court in determining the appropriateness of summary judgment. *Dique v. N.J. State Police*, 603 F.3d 181, 185 (3d Cir.2010).

---

*United States Dist. Court for the S. Dist. of Iowa*, 490 U.S. 296, 308 n. 8, 109 S.Ct. 1814, 104 L.Ed.2d 318 (1989), such a power, if it exists, is not statutorily derived.

7. "Although we recognize[ ] that the majority of circuit courts of appeals hold otherwise, we [have] ruled that a party who failed to object to a magistrate's report on an issue referred under [the Federal Magistrates Act, 28 U.S.C. § 636(b)(1)(B) ] has not waived its right to object in this court to the legal conclusions contained therein." *United Steelworkers of*

*America v. N.J. Zinc Co., Inc.*, 828 F.2d 1001, 1006 (3d Cir.1987). Despite the absence of waiver, plain error review is so disadvantageous to the losing party that magistrate judges would be well advised to caution litigants that they *"must* seek review by the district court by filing [objections] within [14] days of the date of the [Report and Recommendation] with the Clerk of the district court and that failure to do so *will* waive the right to appeal." *Siers v. Morrash*, 700 F.2d 113, 116 (3d Cir.1983) (emphasis added).

According to the Federal Rules of Civil Procedure in effect in 2007, summary judgment is appropriate when, assuming the truth of the nonmovant's allegations, "the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact." FED.R.CIV.P. 56(c)(2) (amended effective Dec. 1, 2010). A factual dispute is "genuine" and thus warrants trial "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty Lobby,* 477 U.S. 242, 248–49, 252, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

As to his claim of "cruel and unusual punishment," Brightwell failed to present any evidence that Appellees denied him medical care or "acted 'with deliberate indifference to his ... serious medical needs.'" *Montgomery v. Pinchak,* 294 F.3d 492, 499 (3d Cir.2002) (quoting *Estelle v. Gamble,* 429 U.S. 97, 104, 97 S.Ct. 285, 50 L.Ed.2d 251 (1976)). Given the record, no jury could find that Brightwell's diet or cell temperature were "serious medical needs" or that he had anything lodged in his right eye.[8] Moreover, Brightwell failed to support his allegations that Appellees were indifferent to his medical needs. In fact, aside from Brightwell's own vague assertions and self-diagnoses, all of the record evidence—including DOC records and supporting affidavits from prison officials—indicate that he received appropriate accommodations and regular medical screenings, including one by an optometrist who recommended bifocal lenses, which Brightwell refused to wear. Brightwell's Eighth Amendment claims are thus based entirely on "[s]peculation[,] ... conclusory [and] ... ambiguous allegations[,] and vague inferences." *Ridgewood Bd. of Educ. v. N.E. ex rel. M.E.,* 172 F.3d 238, 252, 254 (3d Cir.1999) (citation omitted).

Brightwell's First Amendment claim fares no better. To establish a claim for retaliation contrary to the First Amendment, a plaintiff must show: (1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action. *See Mt. Healthy City Sch. Dist. Bd. of Educ. v. Doyle,* 429 U.S. 274, 287, 97 S.Ct. 568, 50 L.Ed.2d 471 (1977); *see also Anderson v. Davila,* 125 F.3d 148, 163 (3d Cir.1997). We agree with Appellees that the alleged retaliation in this case—a "misconduct" charging Brightwell with filing a false report that was dismissed—does not rise to the level of "adverse action" because it would not be "sufficient 'to deter a person of ordinary firmness' from exercising his First Amendment rights." *Allah v. Seiverling,* 229 F.3d 220, 225 (3d Cir.2000) (quoting *Suppan v. Dadonna,* 203 F.3d 228, 235 (3d Cir.2000)); *cf. Bridges v. Gilbert,* 557 F.3d 541, 555 (7th Cir.2009) ("A single retaliatory disciplinary charge that is later dismissed is insufficient to serve as the basis of a § 1983 action." (citation omitted)).

In sum, Brightwell failed to proffer sufficient evidence to allow a reasonable jury

---

8. Brightwell is correct that expert testimony is not necessarily required to establish the existence of a serious medical need. Other forms of extrinsic proof—e.g., medical records, photographs, etc.—may suffice in some cases. We merely find that the record in this case is devoid of any such evidence.

to find the essential elements of any of his claims. Accordingly, the District Court committed no error, much less plain error, when it entered summary judgment against him.

## III

Because the District Court did not err when it denied Brightwell's request for counsel or when it entered summary judgment against him, we will affirm the judgment of the District Court.