BLD-230                                          NOT PRECEDENTIAL

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 11-1932
_____

SHAKUR D. GANNAWAY,
                                        Appellant

v.

NICHOLAS KARETAS; MATTHEW BEIGHLEY; JOSEPH M. BROWN;
CHRISTOPHER DINGER; WEST READING HOSPITAL; BOROUGH CITY OF
READING; BOROUGH OF CITY OF WEST READING; JUSTIN UCZYNSKI; MIKE
BEAN; ROBERT PAUL KELLER; TYLER DENGLER
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil No. 5-09-cv-02688)
District Judge:  Honorable Eduardo C. Robreno
_____

Submitted for Possible Dismissal Pursuant to 28 U.S.C. § 1915(e)(2)(B)
or Summary Action Pursuant to Third Circuit LAR 27.4 and I.O.P. 10.6
July 8, 2011

Before:  SLOVITER, JORDAN and GREENAWAY, JR., <u>Circuit</u> <u>Judges</u>

(Opinion filed  July 19, 2011 )
_____

OPINION
_____

1

PER CURIAM

I.

On May 25, 2009, two men executed a gunpoint robbery of a Lukoil gas station at 315 Penn Avenue in West Reading, Pennsylvania, after which they fled the scene in a black Ford Explorer. Police officers soon spotted the vehicle and engaged in pursuit—a chase that ended abruptly when the Explorer struck two parked cars. The driver and his two passengers, one of whom was appellant Shakur Gannaway, ran from the vehicle. As officer Justin Uczynski chased Gannaway down the street, two private citizens, Robert Paul Keller and Tyler Dengler, were driving by; they swerved their van in front of Gannaway, cutting him off. Uczynski tackled Gannaway, restrained him with the help of other officers, and took him into custody. Gannaway would later be charged in the Court of Common Pleas of Berks County with numerous offenses relating to the robbery and flight.[1]

On June 10, 2009, Gannaway initiated a pro se 42 U.S.C. § 1983 civil rights suit in the United States District Court for the Eastern District of Pennsylvania. In a vague but brief filing, he complained of the injuries he sustained when he was tackled and the treatment he received upon being held as a pre-trial detainee. Specifically, he wrote that various officers "attack[ed] [him] in the course of arresting [him]," jumping on his back after the tackle (which he attributed to officer Joseph M. Brown) while shouting abuse.

2

He maintained that one officer removed $300 cash from his pockets and confiscated his identification and credit cards, while officer Christopher Dinger "laugh[ed] in his face." Gannaway claimed to have suffered a cracked tooth and head/back injuries during the arrest, and requested relief in the form of, inter alia, "reimburs[ement] for my tooth being crack[ed] as well as . . . pay[ment] for my medical and tuition money that I will need to pay to go back to Pace University."

The defendants responded with a partial Motion to Dismiss on July 29, 2009, in which they also requested that the case be stayed pending the resolution of Gannaway's state criminal trial. The parties discussed the motion by telephone conference on November 4, 2009. Counsel for the defendants explained that the "police departments" named in the complaint were not proper parties and should be dismissed, and asked that Gannaway "file an amended complaint as to any other claims, if he wished to proceed on any other claims in addition to excessive force." Following a brief discussion of the municipality/township status of the cities of Reading and West Reading, the District Court instructed Gannaway:

> So, this is what you need to do. The motion to dismiss the Reading Police Department and the West Reading Police Department will be granted with leave to amend. So, what you need to do, is you have to file an amended complaint and you will name in the amended complaint the West Reading Borough, or the Borough of West Reading, and you will name the City of Reading, and that will get you the right defendants here. . . . So, you have thirty days to file an amended complaint and you will name all these

---

[1] Gannaway was convicted in May of 2010. See generally Commonwealth v. Gannaway, CP-06-CR-0003906-2009.

3

individuals who you named earlier and you will also name the Borough of West Reading and the City of Reading.

11/4/2009 Tr. 8:16–24, 10:16–20. Before the hearing concluded, defense counsel again emphasized that Gannaway had identified the wrong people in his complaint, or had mis-assigned their tasks, apparently from misreading the police reports:

> He has sued the wrong people. If he reads his police reports he will realize, for instance, that Detective Brown simply was the person that did the arrest warrant, he was not on the scene at all, things like that. So, he does have the wrong people. He may want to look at that when he files his amended complaint.

Id. 12:5–12. The District Court issued an order granting the defendants' motion to dismiss with leave to amend the complaint. See Order, ECF No. 21.

Shortly thereafter, Gannaway filed an amended complaint, adopting the police and municipality substitutions recommended by the District Court and defense counsel, while also "adding" defendants Reading Hospital/Medical Center, Keller, and Dengler.[2] A rambling, handwritten document, the amended complaint restated the earlier allegations while originating others. Gannaway claimed that the officers used racist language while apprehending him and requested that the civilian defendants be held accountable for the injuries he sustained. He also accused the officers of stealing his property, and "[sought] compensation for defamation and procrastinating my positive image." Finally, he raised a claim regarding pre-incarceration treatment, accusing the local hospital and his treating nurse of "rushing" a Computerized Axial Tomography ("CAT") scan without waiting for

4

it to properly finish. Ending abruptly, the amended complaint was neither dated nor signed.

The District Court issued a ruling, requesting that Gannaway "show cause as to why Defendants Reading Hospital and Medical Center, Officer Justin Uczynski, Officer Mike Bean, Tyler Dengler and Robert Paul Keller should not be dismissed for Plaintiff's failure to obtain leave of court." Order, ECF No. 25. The court emphasized the limited scope of the leave granted at the telephonic conference, which permitted Gannaway to "add as defendants *only* the City of Reading and the Borough of West Reading." Id. (emphasis added). Following Gannaway's "response" (ECF No. 30), the District Court dismissed those additional defendants.

Gannaway was deposed by the remaining defendants, after which they moved for summary judgment. His responses to the defendants' motion for summary judgment shared the stream-of-consciousness character of his earlier filings, as he insisted that Keller and Dengler "actually acted as officers more than civilians on that day." Gannaway asked repeatedly for counsel; his requests were denied. Ultimately, the District Court granted summary judgment in favor of the defendants, concluding that "[b]ased on the totality of the circumstances, the officers acted objectively reasonabl[y] when they tackled and handcuffed Plaintiff." Gannaway v. Karetas, No. 09-2688, 2011 WL 1196872, at *4 (E.D. Pa. Mar. 31, 2011).

---

[2] Gannaway later claimed that Dengler and Keller were the "John Does" in his original

Gannaway timely appealed the District Court's order. He has asked us, on at least two occasions, to appoint counsel, while accusing the prison of withholding access to the law library and tampering with his legal mail.[3]

## II.

We have jurisdiction under 28 U.S.C. § 1291. "Our review of a district court's decision to grant a motion to dismiss or a motion for summary judgment is plenary." Gallo v. City of Phila., 161 F.3d 217, 221 (3d Cir. 1998). In reviewing the summary judgment order, we apply "the same standard that the lower court should have applied." Farrell v. Planters Lifesavers Co., 206 F.3d 271, 278 (3d Cir. 2000); see also Fed. R. Civ. P. 56(a) (summary judgment is appropriate if "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law"). We "view the facts and draw inferences in the light most favorable to the nonmoving party," and as Gannaway proceeds pro se, we must liberally construe his filings. Ray v. Twp. of Warren, 626 F.3d 170, 173 (3d Cir. 2010); Renchenski v. Williams, 622 F.3d 315, 337 (3d Cir. 2010).

Orders denying an inmate's request for appointment of counsel are reviewed for abuse of discretion. Brightwell v. Lehman, 637 F.3d 187, 191 (3d Cir. 2011). While our

---

complaint.

[3] He did not raise these final two claims below. Accordingly, they are waived, and we will not discuss them further. Brown v. Philip Morris, Inc., 250 F.3d 789, 799 (3d Cir. 2001).

review of leave-to-amend issues under Federal Rule of Civil Procedure 15(a)(2) is also for abuse of discretion, we have observed that "if a plaintiff requests leave to amend a complaint vulnerable to dismissal before a responsive pleading is filed, such leave *must* be granted in the absence of undue delay, bad faith, dilatory motive, unfair prejudice, or futility of amendment." Grayson v. Mayview State Hosp., 293 F.3d 103, 108 (3d Cir. 2002) (emphasis added) (citing Foman v. Davis, 371 U.S. 178, 182 (1962)); see also Centifanti v. Nix, 865 F.2d 1422, 1431 n.9 (3d Cir. 1989) ("[N]either a motion to dismiss, nor a motion for summary judgment, constitutes a responsive pleading under Federal Rule of Civil Procedure 15(a)."). If no substantial question is presented by this appeal, we may summarily affirm on any ground supported by the record. Murray v. Bledsoe, No. 10-4397, ___ F.3d ___, 2011 WL 2279428, at *1 (3d Cir. June 10, 2011); see also Third Cir. L.A.R. 27.4; I.O.P. 10.6.

III.

At the outset, we conclude that the District Court abused its discretion when it dismissed the "additional" parties in Gannaway's amended complaint. To be sure, any attempt to amend the complaint would have proceeded under Rule 15(a)(2), as neither of the "matter of course" conditions of 15(a)(1) applied by the time of the District Court's order. But we see no justification for limiting Gannaway to only those amendments identified by the District Court in the November 4 telephone conference. First, counsel for the defendants rightly pointed out several other errors in Gannaway's original

7

complaint, to no apparent opposition from the District Court. Second, the actual order granting leave to amend is without stated limitation. Third, no Grayson/Foman factors, which would counsel against the freedom to amend, appear to be present. And fourth, the joinder of at least one of the dismissed parties—officer Uczynski, who was responsible for actually tackling Gannaway—was arguably "necessary" under Federal Rule of Civil Procedure 19(a). See Gen. Refractories Co. v. First State Ins. Co., 500 F.3d 306, 313 (3d Cir. 2007).

Despite the District Court's error, we will summarily affirm its judgment. Gannaway's complaint, in its amended form, fails to state a viable claim against several of the named defendants; and, with regard to the others, our examination of the record reveals no genuine issue for trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986). We will discuss each defendant (or group of defendants) in turn.

A) Reading Hospital and Medical Center and Its Employees

Gannaway alleged that the Hospital failed to complete its medical examination of him—specifically, its CAT scan—before he was returned to Berks County Prison. He also attempted to name as a defendant the nurse who performed one of the procedures.

Section 1983 grants a federal cause of action only against "person[s]" acting "under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia." 42 U.S.C. § 1983. Therefore, "a plaintiff seeking to hold an individual liable under § 1983 must establish that []he was deprived of a

8

federal constitutional or statutory right by a state actor." <u>Kach v. Hose</u>, 589 F.3d 626, 646 (3d Cir. 2009); <u>see also</u> <u>Brown v. Philip Morris, Inc.</u>, 250 F.3d 789, 801–02 (3d Cir. 2001) (discussing exceptions in the context of <u>Bivens</u>).

As it emphasized in its motion to dismiss, Reading Hospital and Medical Center is a "not-for-profit healthcare center providing comprehensive acute care, post-acute rehabilitation, behavioral, and occupational health services to the people of Berks and adjoining counties." About the Reading Hospital, http://www.readinghospital.org/AboutUs (last visited June 23, 2011). It is not a state institution, and no contention has been made to the contrary. Accordingly, allegations against the Hospital and its employees would have been properly dismissed.

## B) <u>Keller and Dengler</u>

The two civilians who swerved their van in front of Gannaway as he was making his post-collision escape, Keller and Dengler are alleged to have bumped Gannaway's shin and foot, causing his initial stumble and providing an opening for the tackle. <u>See</u> Gannaway Dep. 45:5–46:2. Throughout the case, Gannaway has repeatedly expressed his conviction that the two civilians should bear some responsibly for the injuries he sustained. <u>See, e.g.</u>, <u>id.</u> 44:6–10 ("I don't see why it[']s some . . . like being sympathetic to the fact that they put [themselves] in part of this and they don't want to be held liable for their actions. They intentionally and knowingly took part in this.").

As above, however, there is no suggestion that either civilian acted under color of

9

state law.  On rare occasions, a private citizen performing public functions can be subject to liability under § 1983.  See Proffitt v. Ridgway, 279 F.3d 503, 507–08 (7th Cir. 2002) (describing the "two circumstances in which private citizens can be brought within the grasp of section 1983," one of which involves becoming "a public officer pro tem," such as through informal deputizing).  Regardless:

> we do not think that the rendering of brief, ad hoc assistance to a public officer transforms a bystander into a state actor, exposing him to liability under federal law and, by doing so, discouraging people from helping the police.  . . . To assist the police is a duty of citizenship; and the performance of a duty to someone does not turn the performer into that someone.

Id. at 508.  The assistance rendered to the police was but spontaneous and fleeting; the police themselves were surprised by the intervention.  See Mike Bean's Supp. Offense Report ("I thought this Jeep was an undercover police vehicle but it was some citizens who saw [the chase] and they just wanted to help.").

Thus, Keller and Dengler are not subject to suit under § 1983.


C)  Police and Municipalities

The core of Gannaway's suit is contained in his allegations against the cities of Reading and West Reading, as well as the individual officers who participated in his arrest.  He claims that the officers used excessive force in subduing him, which he feels was unjustified by the circumstances surrounding his arrest.

An excessive force claim sounds under the Fourth Amendment to the United States Constitution, where it is considered a seizure.  See Carswell v. Borough of

Homestead, 381 F.3d 235, 240 (3d Cir. 2004).  As in other areas of federal Fourth Amendment jurisprudence, we must determine the reasonableness of "the force used to effect [the] particular seizure."  Graham v. Connor, 490 U.S. 386, 396 (1989).  Factors to be marshaled in making this determination include "the severity of the crime at issue, whether the suspect pose[d] an immediate threat to the safety of the officers or others, and whether he [was] actively resisting arrest or attempting to evade arrest by flight."  Id.  Crucially, the reasonableness inquiry is an objective one, utilizing the perspective of "a reasonable officer on the scene, rather than . . . the 20/20 vision of hindsight," and it must leave "allowance for the fact that police officers are often forced to make split-second judgments—in circumstances that are tense, uncertain, and rapidly evolving—about the amount of force that is necessary in a particular situation."  Id. at 396–97; see also Carswell, 381 F.3d at 240 ("The test is an objective one, which scrutinizes the reasonableness of the challenged conduct.").

Our standard in hand, we turn to the circumstances surrounding Gannaway's flight and capture.  The crime at issue—an armed robbery of a gas station—was severe. However, the record does not establish with any clarity whether officer Uczynski (the officer who, despite some confusion engendered by Gannaway's deposition testimony, was the only "tackler") knew about the robbery at the time of the pursuit.  The police report he prepared after the incident placed his arrival on the scene "seconds after Off[icer] Dinger"—who was aware of the robbery—"engaged in his foot pursuit [of the

11

other passenger]," and indicates that he was simply advised "that [the] black Ford Explorer crashed on Douglass street." But regardless of his knowledge of the gunpoint robbery, Uczynski was certainly aware that Gannaway had been involved in a vehicular flight from police—an inherently violent and dangerous activity, which in this case resulted in a collision with two (fortuitously empty) parked cars and minor damage to assisting police units. See Sykes v. United States, No. 09-11311, ___ U.S. ___, 2011 WL 2224437, at *6–7 (2011) (discussing the "inherent" risk of violence in vehicular flight). Following the crash, the occupants of the vehicle did not surrender, but instead were determined to flee on foot—and, while doing so, Gannaway was "reaching in the front of his pants."[4] He was not pummeled, not tasered, and not met with deadly force; rather, he was tackled to the ground by Uczynski, after which other officers are alleged to have held him down while he was secured.

Throughout his various submissions and his deposition, Gannaway insists that he was not a threat to the officers, and describes the force used on him as "unnecessary." See, e.g., Am. Compl. 4 (casting himself as "no immediate threat"); Gannaway Dep. 50:14–16, 51:2–8 ("I wasn't no immediate threat to any of them. I wasn't—I didn't have no weapon or nothing of that nature. . . . I didn't think the tackling was necessary."). But Gannaway fails to explain how the police were to recognize that he posed no danger,

_____

[4] Gannaway does not dispute this point, which is contained in Uczynski's incident report. To the contrary, he appears to confirm Uczynski's impression. See Gannaway Dep. 70:1–6 (explaining that his "pants [were] falling off [him]" during the foot chase).

especially in the wake of armed robbery, vehicular flight, and automobile collision. Indeed, as should be evident, Gannaway's conduct satisfied *all three* of the main "reasonable police" factors from Graham: the crime was severe, he clearly was a threat to others, and he continued his attempts to evade arrest by flight. Gannaway's 20-20 hindsight on how the police "should have" apprehended him is irrelevant, as our analysis is concerned with the split-second decisions required by the realities of on-the-ground police work.

In light of the considerations addressed above, we are not prepared to hold that the tackling and restraint were objectively unreasonable and in violation of the Fourth Amendment.[5] Therefore, we are in full accord with the District Court. As there was no constitutional violation, we need not engage in an analysis of qualified immunity.

Finally, as Gannaway does not allege a policy or custom by the municipal defendants that led to an injury, the District Court correctly found in favor of the cities of Reading and West Reading. Monell v. Dep't of Soc. Servs., 436 U.S. 658, 694 (1978).

IV.

As discussed above, Gannaway's suit was meritless. As a result, the District Court did not abuse its discretion in denying his requests for counsel. See Tabron v. Grace, 6 F.3d 147, 155 (3d Cir. 1993).

---

[5] Nor has Gannaway shown unconstitutional defamation by the officers under § 1983. See Paul v. Davis, 424 U.S. 693, 711 (1976); Dee v. Borough of Dunmore, 549 F.3d 225,

V.

For the foregoing reasons, we find no substantial issue in this appeal, and will affirm the judgment of the District Court.  Gannaway's motions to appoint counsel are denied.  Id.

233 34 (3d Cir. 2008).