**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 13-1379
_____

JESSE BOND,
                              Appellant

v.

DAVID HORNE, Corrections Officer (C.O.) State
Correctional Institution at Greene (SCI-Greene);
Lieutenant JAMES LIPSCOMB, State Correctional Institution
at Pittsburgh, (SCI-Pittsburgh); JENKINS, First Name Unknown (FNU), Sergeant SCI-
Greene, Waynesburg, PA; C.O. BASINGER, FNU, SCI-Greene, Waynesburg, PA.;
C.O. KIRK, FNU, SCI-Greene, Waynesburg, PA;
DAN DAVIS, Superintendent's Assistant, SCI-Greene, Waynesburg, PA;
LOUIS FOLINO, Superintendent, SCI-Greene, Waynesburg, PA;
FREDDI NUNEZ, Hearing Examiner, SCI-Pine Grove, Indiana, PA
All defendants were served in their individual capacities

_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2-11-cv-01342)
District Judge:  Honorable David S. Cercone

_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
January 22, 2014
Before:  RENDELL, GREENAWAY, JR. and ALDISERT, Circuit Judges

(Filed: January 27, 2014)
_____

OPINION
_____

PER CURIAM

Jesse Bond appeals pro se from the District Court's order dismissing his civil rights complaint. We will vacate in part the District Court's order and remand for further proceedings.

I.

Appellant Jesse Bond is a Pennsylvania state prisoner who, at all times relevant to this case, was incarcerated at the State Correctional Institution at Greene. Bond's claims stem from a 2005 incident in which Corrections Officer David Horne allegedly assaulted Bond. Following the incident, Bond sued Horne and other prison officials, and the parties eventually agreed to a settlement. According to Bond, that settlement included an oral agreement that the prison would prevent Horne from interacting with Bond and would transfer Bond to a different state correctional institution. However, 54 days after the settlement (but before Bond had been transferred), Horne delivered a meal to Bond's cell. Bond reacted by throwing the food back towards the meal cart, some of which landed on Horne. Horne then filed a misconduct report, alleging that Bond had assaulted him.

After a hearing in which Bond did not dispute throwing food at the meal cart, Hearing Examiner Freddi Nunez decided that Bond "pleaded guilty" to assault and sentenced him to 30 days of disciplinary custody. Bond filed a first level appeal pursuant to the Pennsylvania Department of Corrections' Inmate Grievance Procedure Policy No. DC-ADM 801, which the Program Review Committee denied. Although he

2

subsequently filed a second level appeal, he never received a response from Superintendent Louis Folino or any other prison official. After the time for ruling on the second-level appeal had passed, Bond sent a follow-up letter to Folino. In that letter, Bond requested that any response be forwarded to him at the prison where he was to be transferred. Bond never received a response to that letter or to his appeal.

Bond then filed a civil rights complaint in the District Court, pursuant to 42 U.S.C. § 1983, which he later amended. His amended complaint alleged, among other claims, that Horne and other defendants retaliated against him for filing suit after the 2005 incident. The defendants filed a motion to dismiss, arguing that (1) Bond had failed to exhaust his claims in the prison remedy system, as required by 42 U.S.C. § 1997e(a) and DC-ADM 804, and (2) the claims otherwise lacked merit.

The Magistrate Judge who was assigned to the case found that Bond had failed to exhaust his administrative remedies under DC-ADM 804 and recommended granting the defendants' motion to dismiss. Bond objected to that recommendation, asserting that the Magistrate Judge incorrectly analyzed his claim as an inmate grievance requiring exhaustion under DC-ADM 804. Bond added that he had exhausted his remedies through the prison's disciplinary appeals process set forth in DC-ADM 801. The District Judge agreed with Bond that the claims needed to have been exhausted under DC-ADM 801 rather than DC-ADM 804, but still found that Bond's claims were unexhausted. The District Court then dismissed the amended complaint with prejudice. Bond timely appealed from the District Court's judgment.

3

## II.

We have appellate jurisdiction pursuant to 28 U.S.C. § 1291, and exercise plenary review over the District Court's dismissal of Bond's amended complaint.  See Tourscher v. McCullough, 184 F.3d 236, 240 (3d Cir. 1999).  To survive a motion to dismiss, a plaintiff must "state a claim to relief that is plausible on its face."  Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007).  The complaint must contain "factual content that allows the court to draw the reasonable inference that the defendant[s are] liable for the misconduct alleged."  Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (citing Twombly, 550 U.S. at 556).    In conducting our review, we liberally construe Bond's pro se filings.  See Higgs v. Att'y Gen., 655 F.3d 333, 339 (3d Cir. 2011).

## III.

The District Court dismissed Bond's claims as unexhausted.  An inmate is prohibited from bringing a civil rights suit alleging specific acts of unconstitutional conduct by prison officials "until such administrative remedies as are available are exhausted."  42 U.S.C. § 1997e(a).  We recently stated in Small v. Camden County,728 F.3d 265 (3d Cir. 2013), that the administrative appeals process is unavailable to an inmate when he fails to receive a response to or decision on his grievances.  728 F.3d at 273.  Here, Bond never received a decision on his second level appeal, and the Superintendent failed to respond to Bond's follow-up letter.  The administrative appeals

process was therefore not available to Bond.[1] See id. at 273-74.

Appellees assert that the District Court's judgment should nonetheless be affirmed, as Bond has not stated alleged a facially plausible claim for retaliation or breach of contract. An inmate asserting a retaliation claim must demonstrate that "(1) he engaged in constitutionally protected conduct, (2) he was subjected to adverse actions by a state actor, and (3) the protected activity was a substantial motivating factor in the state actor's decision to take the adverse action." Brightwell v. Lehman, 637 F.3d 187, 194 (3d Cir. 2011). If the inmate has made his prima facie case, the prison officials may still prevail by showing that they "would have made the same decision absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser v. Horn, 241 F.3d 330, 334 (3d Cir. 2001).

Here, Bond alleged that he filed a lawsuit in 2005 after he was assaulted by Horne, and that he agreed to settle that case in 2010. Filing and settling a lawsuit is a protected activity. See Smith v. Mensinger, 293 F.3d 641, 653 (3d Cir. 2002). Bond also alleged that Horne filed a misconduct report against him in 2010, shortly after the settlement agreement. As a result of the misconduct report, Bond spent 30 days in disciplinary custody. That sanction may be sufficient to constitute an "adverse action" for retaliation purposes. See Allah v. Seiverling, 229 F.3d 220, 225 (3d Cir. 2000) (declining to hold that placement in restricted housing "can never amount to adverse action," and stating

---

[1] In their briefs, both parties have recognized and conceded that, in light of Small, Bond substantially complied with the prison's administrative remedies.

5

that "whether a prisoner-plaintiff has met that prong of his retaliation claim . . . will depend on the facts of the particular case"); see also Rauser, 241 F.3d at 333 (stating that an inmate satisfies the "adverse action" requirement "by demonstrating that the action was sufficient to deter a person of ordinary firmness from exercising his constitutional rights") (internal quotation marks and citation omitted). Finally, to demonstrate the requisite causal connection, Bond provided the affidavit of a fellow prisoner, Robert L. Cook, Jr. Cook stated that, on the morning of the incident giving rise to the misconduct report, another inmate overheard Horne tell someone that Horne planned to "get even" with Bond for the settlement agreement. This evidence, if true, would certainly establish the requisite causal connection between Bond's protected activity and the alleged adverse action taken against him. Bond has therefore alleged a prima facie case of retaliation against Horne.[2]

The burden must then shift to the defendants to prove that they would have sanctioned Bond "absent the protected conduct for reasons reasonably related to a legitimate penological interest." Rauser, 241 F.3d at 334. In their motion to dismiss, the defendants claimed that Bond's admission of the facts contained in the misconduct report

---

[2] We note that Bond's retaliation claim does not directly implicate the personal involvement of six of the seven other defendants, and therefore was properly dismissed insofar as it named them as defendants. See Rode v. Dellarciprete, 845 F.2d 1195, 1207-08 (3d Cir. 1988) (stating that "[an individual government] defendant in a civil rights action must have personal involvement in the alleged wrongs," and that a prison official's secondary review of an inmate's grievance or appeal is not sufficient to demonstrate the requisite personal involvement). To the extent that Nunez was directly involved, Bond has not stated that Nunez possessed a retaliatory motive.

undermined his claim for retaliation. Bond countered that he only admitted to hitting the food off the cart, not that he assaulted Horne. While a finding of guilt in a prison disciplinary proceeding may well be sufficient in certain circumstances to satisfy the defendants' burden, see, e.g., Carter v. McGrady, 292 F.3d 152, 159 (3d Cir. 2002) ("Given the quantum of evidence of Carter's misconduct, we cannot say that the prison officials' decision to discipline Carter for his violations of prison policy was not within the 'broad discretion' that we must afford them."); Henderson v. Baird, 29 F.3d 464, 469 (8th Cir. 1994) (concluding that, because the finding of guilt in the inmate's disciplinary hearing was based on "some evidence," that finding "essentially checkmates his retaliation claim"), we conclude that it is not sufficient here.

Bond, unlike the litigants in previous cases, was unable to appeal the finding of guilt beyond the first level of administrative review because the administrative appeals process was not available to him. While we make no finding as to Bond's actual guilt of the misconduct charged, it is at least possible that the finding of guilt might have been overturned had he been able to pursue an administrative appeal. Moreover, unlike the vast majority of our previous cases on this issue, Bond's amended complaint was dismissed on a Rule 12(b)(6) motion. At least one other court of appeals has found that point to be significant. See Thomas v. Eby, 481 F.3d 434, 441-42 (6th Cir. 2007) (concluding that "it makes little sense" to apply the burden-shifting aspect of the retaliation standard at the pleading stage). Because the District Court relied only on Bond's purported failure to exhaust his administrative appeals, the District Court has not

7

yet addressed the merits of Bond's retaliation claim. We think it should do so in the first instance.

Bond also alleged that the defendants violated his right to procedural due process. "To prevail on a procedural due process claim, a litigant must show (1) that the state deprived him of a protected interest in life, liberty, or property and (2) that the deprivation occurred without due process of law." Burns v. Pa. Dep't of Corr., 544 F.3d 279, 285 (3d Cir. 2008). Prisoners generally have a protected liberty interest only in "freedom from restraint" that "imposes atypical and significant hardship on the inmate in relation to the ordinary incidents of prison life." Sandin v. Conner, 515 U.S. 472, 484 (1995). Here, Bond alleged that the defendants filed a false misconduct report, refused to hear and adjudicate his second level appeal of that misconduct report, and subjected him to 30 days in disciplinary custody. We have previously held that an allegedly fraudulent misconduct report and related disciplinary sanctions lasting longer than 30 days fell short of a due process violation. See, e.g., Smith, 293 F.3d at 653-54. We have also recognized, however, that "prison disciplinary proceedings may . . . constitute a denial of due process in the context of a civil rights action under § 1983 when they are instituted for the sole purpose of retaliating against an inmate for his/her exercise of a constitutional right." Id. at 653. We leave it to the District Court to consider in the first instance this final point when it examines Bond's retaliation claim on remand.

Bond's remaining federal law claims lack merit. His equal protection claim fails because he has not demonstrated that he was treated differently than any similarly

situated prisoners.  See Andrews v. City of Phila., 895 F.2d 1469, 1478 (3d Cir. 1990).

Bond's 42 U.S.C. § 1985 conspiracy claim fails because he did not allege that the

defendants entered into a conspiracy motivated by "'some racial, or perhaps otherwise

class-based, invidiously discriminatory animus.'"  Farber v. City of Paterson, 440 F.3d

131, 135 (3d Cir. 2006) (quoting Griffin v. Breckenridge, 403 U.S. 88, 102 (1971))

(emphasis omitted).  Bond also asserted that the defendants violated his right to be free

from cruel and unusual punishment by "provoking" him, issuing a misconduct report,

holding a hearing on that misconduct report, finding him guilty, and transferring him to

disciplinary custody.  However, Bond failed to state a prima facie claim for a violation of

the Eighth Amendment as he did not allege any danger to or interference with his health,

safety, or basic needs.  See Farmer v. Brennan, 511 U.S. 825, 834 (1994) (stating that a

prison official violates the Eighth Amendment when his "act or omission . . . result[s] in

the denial of the minimal civilized measure of life's necessities," and does so with

"deliberate indifference" to the inmate's health or safety).

　　　To the extent Bond raised state law claims for harassment, filing a false

misconduct report, breach of contract, and extortion, these appear to be state law claims

rather than federal law claims.  We leave it to the District Court to determine whether to

exercise supplemental jurisdiction over those claims pursuant to 28 U.S.C. § 1367(a).

　　　Accordingly, we will vacate in part the judgment of the District Court insofar as it

dismissed Bond's retaliation, due process, and state law claims, and remand for further

proceedings.

9