**PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 19-2173
_____

M.S., a minor, by and through her mother Paris Hall;
PARIS HALL, individually,
                                        Appellants

v.

SUSQUEHANNA TOWNSHIP SCHOOL DISTRICT;
SHAWN A. SHARKEY
_____

On Appeal from the United States District Court
for the Middle District of Pennsylvania
(D.C. Civil No. 1-13-cv-02718)
District Judge: Honorable Yvette Kane
_____

Submitted Under Third Circuit L.A.R. 34.1(a):
April 23, 2020

Before: PORTER, RENDELL, and FISHER
*Circuit Judges*.

(Filed: August 5, 2020)
_____

Dennis E. Boyle
Whiteford Taylor & Preston
1800 M Street, N.W.
Suite 450N
Washington, D.C. 20036
        *Counsel for Appellant*

Carl P. Beard
Elizabeth A. Benjamin
Beard Legal Group
3366 Lynnwood Drive
P.O. Box 1311
Altoona, PA 16603
        *Counsel for Appellees*

_____

OPINION OF THE COURT
_____

PORTER, *Circuit Judge*.

Shawn A. Sharkey, an assistant principal at Susquehanna Township High School, had a sexual relationship with M.S., a sixteen-year-old female student. M.S. sued the School District alleging, in part, that it violated Title IX by responding inadequately to Sharkey's sexual misconduct. The District Court granted summary judgment for the School District. We will affirm.

# I
## A

Shawn A. Sharkey began working as a special educator and assistant principal at Susquehanna Township High School in January 2013. He soon met M.S., a sixteen-year-old female student, and they began a sexual relationship that lasted until the end of March 2013.

Weeks later, students began spreading rumors that M.S. and Sharkey had carried on a sexual relationship. Because of the commotion, the School District launched an investigation into the rumors. The School District's investigation was conducted by another assistant principal, the principal, an assistant superintendent, and the superintendent. It included numerous interviews with M.S., Sharkey, other students, a review of Sharkey's telephone records, and an examination of texts, emails, and photos on M.S.'s telephone and on Sharkey's district-issued telephone. M.S. and Sharkey steadfastly denied the rumors.

As a result of the investigation, the School District knew that: (1) some students had spread rumors about M.S. and Sharkey; (2) M.S. had a crush on Sharkey; (3) no student had seen pictures or texts substantiating the rumors; (4) M.S.'s and Sharkey's phones lacked any evidence of wrongdoing; and (5) M.S. and Sharkey denied the rumors. At this point, after conferring with the School District's attorney, the superintendent ended the investigation.

At the beginning of the next school year, the rumors about M.S. and Sharkey resurfaced. This time, the School District contacted the Susquehanna Township police and

3

placed Sharkey on administrative leave. Police detectives met with M.S., who again denied having a sexual relationship with Sharkey. The police informed her that they planned to get a search warrant for her phone. The next day, September 19, 2013, M.S. and her parents met with the police at the local station. There, for the first time, M.S. admitted to and provided details about her relationship with Sharkey.

On September 20, 2013, Sharkey was criminally charged. On September 27, 2013, the School District informed Sharkey that it intended to terminate his employment. Three days later, the School District received a resignation letter from Sharkey, which the School District accepted at its next board meeting. On November 5, 2013, M.S. filed her complaint against the School District.

**B**

M.S.'s complaint named the School District and several School District officials as defendants.[1] Her complaint alleged a hostile educational environment because of Sharkey's sexual harassment and students' behavior[2] in violation of Title IX, violations of the Fourteenth Amendment, and state-law claims. The District Court dismissed all but M.S.'s Title IX hostile-educational-environment claim against the School District.

The School District eventually moved for summary judgment on M.S.'s Title IX claim. The Magistrate Judge issued a Report and Recommendation suggesting that the District Court grant summary judgment in the School District's favor. M.S. did not object to the Report and Recommendation. The District Court adopted the Report and Recommendation and entered summary judgment for the School District.

---

[1] Shawn Sharkey was also named as a defendant, but he is not a party to this appeal. The District Court entered default judgment against Sharkey and ordered him to pay $700,000 in damages. *See* Judgment, *M.S. v. Susquehanna Twp. Sch. Dist.*, No. 1:13-cv-02718-YK (M.D. Pa. Apr. 30, 2019), ECF No. 121.

[2] In her reply brief on appeal, M.S. first argued that the School District's deliberate indifference subjected her to further harassment by other students. She forfeited the argument by failing to raise it in her opening brief on appeal. *See United States v. Pelullo*, 399 F.3d 197, 222 (3d Cir. 2005). But, even if the issue were preserved and even if the students' behavior was Title IX harassment, the complained-of conduct occurred after M.S. stopped attending Susquehanna Township High School.

5

M.S. filed a motion for reconsideration asking that the District Court grant her leave to file objections to the Report and Recommendation and reconsider its summary judgment order. The District Court denied M.S.'s request to file untimely objections because "the arguments presented by [M.S. in her proposed objections] are unavailing and would not have altered the decision reached by the Court." App. 40. The District Court then denied M.S.'s motion for reconsideration.

M.S. timely appealed.[3] Thus, we must decide whether the District Court properly granted summary judgment to the School District on M.S.'s Title IX hostile-educational-environment claim.

---

[3] In her amended notice of appeal, M.S. appealed: (1) the District Court's two orders that dismissed all the claims against the School District officials and all the claims—except for the Title IX hostile-educational-environment claim—against the School District; (2) the District Court's order granting summary judgment for the School District on her Title IX claim; and (3) the District Court's order denying her motion for reconsideration. *See* JA 1. Yet, in her opening brief, M.S. states that the order she appeals from is only the "Order granting Summary Judgment" to the School District on the Title IX hostile-educational-environment claim. Appellants' Br. 1. Accordingly, she forfeited her challenges to the other orders. *See United States v. Peppers*, 899 F.3d 211, 235 (3d Cir. 2018) (citing *Barna v. Bd. of Sch. Dirs. of Panther Valley Sch. Dist.*, 877 F.3d 136, 147 (3d Cir. 2017) (noting that a party forfeited an argument because he neither briefed nor argued it on appeal)).

## II

The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. We have appellate jurisdiction under 28 U.S.C. § 1291.

The parties dispute whether we apply de novo or plain-error review. Ordinarily, when a party fails to object to a report and recommendation, "we review the District Court's grant of summary judgment for plain error." *Brightwell v. Lehman*, 637 F.3d 187, 193 (3d Cir. 2011) (citation omitted). But, in some cases, we will apply de novo review if the District Court "elect[ed] to exercise its power to review a magistrate's report *de novo*." *Orie v. Dist. Att'y Allegheny Cnty.*, 946 F.3d 187, 193 (3d Cir. 2019) (citation and alteration omitted). Regardless of whether we conduct de novo or plain-error review, we apply the summary judgment standard.[4]

Summary judgment is appropriate if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). We view the evidence in the light most favorable to the non-moving party. *See Melrose, Inc. v. City of Pittsburgh*, 613 F.3d 380, 387 (3d Cir. 2010). A fact is material if—taken

---

[4] Before we decide whether to exercise our discretion, plain-error review requires that "we find (1) an error, (2) that is plain—i.e., clear and obvious—and (3) the error affected the defendant's substantial rights." *Forrest v. Parry*, 930 F.3d 93, 113 (3d Cir. 2019) (citation omitted). To decide whether the District Court's grant of summary judgment was "error," we apply the summary judgment standard. *See, e.g.*, *Brightwell v. Lehman*, 637 F.3d 187, 193–94 (3d Cir. 2011).

as true—it would affect the outcome of the case under governing law. *Anderson v. Liberty Lobby*, 477 U.S. 242, 248 (1986). And a factual dispute is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.*

Because the School District is entitled to judgment as a matter of law, M.S.'s appeal would not survive either de novo or plain-error review. We therefore assume without deciding that de novo review applies. For the following reasons, we will affirm the District Court's order granting summary judgment.

**III**

Title IX of the Education Amendments of 1972 requires that "[n]o person . . . shall, on the basis of sex, . . . be subjected to discrimination under any education program or activity receiving [f]ederal financial assistance." 20 U.S.C. § 1681(a). Title IX is enforceable "through an implied private right of action." *Gebser v. Lago Vista Indep. Sch. Dist.*, 524 U.S. 274, 281 (1998) (citing *Cannon v. Univ. of Chicago*, 441 U.S. 677 (1979)).

Sexual harassment is a form of Title IX discrimination. *See Davis ex rel. Lashonda D. v. Monroe Cnty. Bd. of Educ.*, 526 U.S. 629, 649–50 (1999) (citations omitted). An administrator's sexual relationship with a high school student is a form of sexual harassment. *See generally Gebser*, 524 U.S. 274. And "a school district can be held liable in damages in cases involving a teacher's sexual harassment of a student[.]" *Id.* at 281 (citing *Franklin v. Gwinnett Cnty. Pub. Schs.*, 503 U.S. 60 (1992)). For a school district to be liable under Title IX's private right of action, an appropriate person must have

8

actual knowledge of sex-based harassment and must respond with deliberate indifference. *See id.* at 290.

Thus, we must first determine whether an appropriate person had actual knowledge of Sharkey's sex-based harassment of M.S.[5] An appropriate person is "an official who at a minimum has authority to address the alleged discrimination and to institute corrective measures on the recipient's behalf." *Id.* The actual knowledge requirement forecloses damages liability based "solely on principles of vicarious liability or constructive notice" and avoids the "risk that the recipient would be liable in damages not for its own official decision but instead for its employees' independent actions." *Id.* at 288, 290–91.

**A**

We are asked to decide whether a perpetrator of sex-based harassment who has authority to address Title IX violations and has knowledge of his own sex-based harassment, like Sharkey,[6] satisfies the appropriate-person standard. This question is one of first impression for this Court.

---

[5] No party disputes that the School District receives federal funding.

[6] Whether an assistant principal has the responsibility and authority to qualify as an appropriate person is a question of fact. *See Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 362 (3d Cir. 2005). Yet here, it is undisputed that, in the event of complaints about harassment, an assistant principal like Sharkey had the authority to implement corrective measures. *See* App. 560–61 (deposition of assistant principal, Kristi Kauffman Prime).

We hold that a perpetrator of sexual harassment who has authority to remedy Title IX violations is *not* an appropriate person for assessing a school district's Title IX liability in a private right of action.[7]

M.S. argues that the Court's holding in *Gebser v. Lago Vista Independent School District* requires that, "[w]hen an 'appropriate person' has knowledge of the Title IX violation, the analysis ends." Appellants' Br. 19 (citation omitted). But *Gebser* also noted that when "a school district's liability rests on actual notice principles, . . . the knowledge of the wrongdoer himself is not pertinent to the analysis." 524 U.S. at 291 (citing Restatement (Second) of Agency § 280 (Am. Law. Inst. 1958)).

M.S. believes that *Gebser*'s reference to § 280 of the Restatement is not applicable to Sharkey—or anyone who would otherwise be an appropriate person who perpetrates Title IX discrimination. *See* Appellants' Br. 20. She attempts to limit the Court's reference by suggesting that § 280 "concerns knowledge of [a] principal through agents and establishes that an agent's knowledge of his or her own wrong does not impute knowledge to a [principal]." *Id.* She concludes that "[w]hen an appropriate person himself . . . causes the Title IX violation, knowledge by another appropriate person is not required." *Id.* (citations omitted). In other words, M.S. believes that *Gebser*'s statement that the wrongdoer's knowledge of his

---

[7] We join the only other circuit to answer the question. *See Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273 (5th Cir. 2017).

10

own misdeeds is irrelevant under actual-notice principles is dicta.[8]

M.S.'s perspective has some intuitive appeal. *Gebser* did not clearly create an exception to damages liability when the perpetrator would otherwise be an appropriate person. This seems especially true because the perpetrator in *Gebser* was a teacher and not an administrator with authority to remedy Title IX violations. *See Gebser*, 524 U.S. at 277–78.

But a closer reading of *Gebser* suggests that the Court's reference to § 280 was essential to its holding. In dissent, Justice Stevens suggested that the *Gebser* majority misapplied the appropriate person standard because "the teacher who abused his student had the authority to take corrective measures when he had actual knowledge of harassment." *Salazar v. S. San Antonio Indep. Sch. Dist.*, 953 F.3d 273, 278 (5th Cir. 2017); *see Gebser*, 524 U.S. at 299 n.8 (Stevens, J., dissenting) (noting that "[t]he fact that [the wrongdoer] did not

---

[8] Pointing to the appropriate person standard in Title IX retaliation cases, M.S. also argues that "[i]t would be illogical to" find that retaliation by an assistant principal is actionable but abuse by an assistant principal who is an appropriate person is not. Appellants' Br. 20. But, in a Title IX retaliation case, an appropriate person's knowledge is not at issue because retaliation presupposes knowledge of Title IX complaints that motivates the adverse action. *See, e.g.*, *Doe v. Mercy Catholic Med. Ctr.*, 850 F.3d 545, 564 (3d Cir. 2017) ("[T]o establish a *prima facie* retaliation case under Title IX, [a plaintiff] must prove she engaged in activity protected by Title IX, she suffered an adverse action, and there was a causal connection between the two." (citation omitted)).

11

prevent his own harassment of [the student] is the consequence of his lack of will, *not his lack of authority*" (emphasis added)). Justice Stevens's suggestion that the teacher in *Gebser* had the authority to address sex discrimination and take corrective measures prompted the *Gebser* majority to respond that the knowledge of the perpetrator—even one that has authority to correct wrongdoing—"is not pertinent to the analysis." *Id.* at 291 (citation omitted).

A hypothetical introduced by the Supreme Court in a case about Title IX retaliation shows that *Gebser*'s appropriate-person standard excludes perpetrators who had authority to take corrective measures. In *Jackson v. Birmingham Board of Education*, the Court noted that a school district "would likely be liable for a Title IX violation" if "a [school] principal sexually harasses a student, and *a teacher* complains to the school board but the school board is indifferent[.]" 544 U.S. 167, 180 (2005) (emphasis added). If a school principal's knowledge of his own wrongdoing is sufficient, as M.S. contends, then the Court's hypothetical would not have needed to include a teacher informing the school board of the wrongdoing.

If anything, the hypothetical includes the report to the school board precisely because *Gebser*'s holding includes an exception to the appropriate-person rule: If an official with authority to remedy Title IX discrimination is also the perpetrator of Title IX discrimination, and no other official with authority to remedy Title IX harassment has actual knowledge of the harassment, then principles of actual-notice render the wrongdoer's knowledge irrelevant. *See Gebser*, 524 U.S. at 291; *see also Salazar*, 953 F.3d at 277–78.

12

Two implications flow from *Gebser*. First, a perpetrator's knowledge of his own Title IX discrimination does not satisfy *Gebser*'s actual-knowledge requirement even if the perpetrator would otherwise be an appropriate person. And second, any report to a perpetrator—even if the perpetrator would otherwise be an appropriate person—will not satisfy *Gebser*. To the contrary, for a school district to have actual knowledge, a report must be made to an appropriate person who is not the perpetrator.

Even if *Gebser*'s holding does not explicitly include an exception for when a perpetrator of sex-based harassment has authority to remedy Title IX violations, three reasons show that an exception is necessary.

First, the exception is implied by the statutory provision that supplied the appropriate-person standard. In *Gebser*, the Court "fashioned" the remedy for damages in an implied right of action using the "appropriate person" standard from Title IX's remedial scheme. 524 U.S. at 290. Under Title IX's remedial scheme, a recipient of federal funding may not lose that funding because of sex-based harassment unless a federal "department or agency . . . has advised the appropriate person or persons of the failure to comply with the requirement and has determined that compliance cannot be secured by voluntary means." 20 U.S.C. § 1682. "When an individual's intentional conduct constitutes the [Title IX] discrimination, the directive to 'advise[ ]' an appropriate person 'of the failure to comply' connotes that the 'appropriate person' is unaware of the misconduct." *Salazar*, 953 F.3d at 279 (quoting 20 U.S.C. § 1682).

13

Second, it would frustrate "the purposes of Title IX" to impose liability on a funding recipient when the only authorized official who knows of the sexual harassment is the perpetrator. *Id.* at 281. Title IX imposes liability only when a federal-funding recipient knows of harassment and fails to address it. *See id.* at 280–81. Imposing liability when only the perpetrator of the harassment knows of his wrongdoing "would be more akin to strict liability[,] . . . or to *respondeat superior*, which the Supreme Court expressly rejected as a basis for an implied right of action under Title IX." *Id.* at 281 (citing *Gebser*, 524 U.S. at 287–88).

Third, when an authorized official perpetrates sexual harassment in violation of a school district's stated policy, that person's failure to respond could not constitute deliberate indifference on behalf of the school district. The premise of damages liability in a Title IX private cause of action "is an *official decision* by the recipient not to remedy" a Title IX violation. *Gebser*, 524 U.S. at 290 (emphasis added). *Gebser* expressly avoided imposing a lower standard that would hold a school district liable "for its employees' independent actions." *Id.* at 291. An authorized official's concealed conduct that violates an official policy can hardly constitute an *official decision* by the school district but rather constitutes the rogue official's "independent action[ ]." *Id.*

Here, the School District's policy "prohibit[ed] all forms of unlawful harassment of students . . . by all district . . . staff members," which included "inappropriate verbal, written, graphic or physical conduct of a sexual nature." App. 286–87. The policy listed examples of sexual harassment, which included "sexual flirtations, advances, touching or propositions[.]" *Id.* at 287. Sharkey's unlawful sexual

14

relationship with M.S. flagrantly violated the School District's policy and thus cannot be the School District's "official decision" not to remedy the Title IX violation. What's more, a perpetrator of sex-based harassment who has authority to take corrective measures on a school district's behalf is "highly unlikely" to report his own misconduct to another official "who is authorized to take corrective measures." *Salazar*, 953 F.3d at 279. For all these reasons, Sharkey, as the wrongdoer, is not an appropriate person for purposes of the Title IX analysis.

**B**

Sharkey's knowledge of his own wrongdoing is irrelevant to the School District's actual knowledge of the sexual harassment. No other appropriate person at the School District had actual knowledge of Sharkey and M.S.'s sexual relationship until September 2013. Within days of acquiring that knowledge, the School District informed Sharkey of its intention to terminate his employment.

An appropriate person has actual knowledge of Title IX discrimination when she is aware of known acts of discrimination. *See Davis*, 526 U.S. at 643; *Bostic v. Smyrna Sch. Dist.*, 418 F.3d 355, 361 (3d Cir. 2005). But this standard may be satisfied only if a school district knows facts showing a school official poses a substantial danger to students. *Bostic*, 418 F.3d at 361; *cf. Bistrian v. Levi*, 696 F.3d 352, 367 (3d Cir. 2012) (explaining that actual knowledge in a deliberate-indifference standard may be satisfied if circumstantial evidence can show an official's actual knowledge). Information suggesting the mere "possibility" of a sexual relationship between a student and teacher is not sufficient. *Bostic*, 418 F.3d at 360–61.

Here, before September 2013, appropriate people did not have actual knowledge of either Title IX discrimination by Sharkey or of facts showing that he posed a substantial danger to students. At most, appropriate people had information—which they did not ignore—suggesting the possibility of a sexual relationship between M.S. and Sharkey. The known facts before September 2013 were insufficient to impose liability on the School District under an actual-knowledge standard. *See Bostic*, 418 F.3d at 360–61.

M.S.'s arguments to the contrary are unavailing. First, she argues that Sharkey's conduct constituted harassment. But that misses the point. The question is not whether Sharkey's conduct violated Title IX (both parties agree that it did) but whether appropriate people *knew* of the Title IX discrimination. Second, M.S. argues that there is sufficient circumstantial evidence to show that appropriate people had actual knowledge. As we have discussed, there was not. M.S. contends that *Bostic* involved less available evidence. But M.S.'s characterization of *Bostic* cannot overcome the paucity of evidence tending to establish actual knowledge. Third, M.S. points to her expert's report that stated that "the information was more than sufficient to place administrators . . . on notice of the violation." Appellants' Br. 27. But an expert cannot testify to the legal conclusion of whether appropriate people had actual knowledge. *See Berckeley Inv. Grp., Ltd. v. Colkitt*, 455 F.3d 195, 217 (3d Cir. 2006) ("[A]n expert witness is prohibited from rendering a legal opinion." (citation omitted)).

\* \* \*

16

Because no appropriate person had actual knowledge of Title IX discrimination, the School District is not liable to M.S. for damages in her Title IX private right of action. We will affirm the District Court.