**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-2637
_____

DERON ODADA JOE,
                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A078-210-971)
Immigration Judge:  Alice Song Hartye
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
February 10, 2022
Before:  KRAUSE, BIBAS and SCIRICA, <u>Circuit</u> <u>Judges</u>

(Opinion filed: March 1, 2022)
_____

OPINION[*]
_____

PER CURIAM

    Deron Odada Joe, a citizen of Liberia, petitions for review of a final order of

removal.  For the following reasons, we will grant the petition in part, deny it in part,

_____
[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

dismiss it in part, and remand to the Board of Immigration Appeals for further proceedings.

Joe was admitted to the United States in 1999 as a nonimmigrant visitor. In 2002, an Immigration Judge granted Joe's application for asylum, and he later adjusted his status to lawful permanent resident. In 2019, a jury in the Eastern District of Pennsylvania found Joe guilty of one count of conspiracy to defraud the United States, see 18 U.S.C. § 371, and eleven counts of aiding and assisting the filing of false tax returns, see 26 U.S.C. § 7206(2).

Based on those convictions, the Government charged Joe with removability for having committed an aggravated felony under 8 U.S.C. § 1101(a)(43)(M) (offense that involves fraud or deceit involving loss to the victim over $10,000), and § 1101(a)(43)(U) (attempt or conspiracy to commit offense defined in § 1101(a)(43)). See 8 U.S.C. § 1227(a)(2)(A)(iii). Joe, through counsel, contested his removability and applied for adjustment of status, a waiver of inadmissibility under 8 U.S.C. § 1182(h), and asylum, withholding of removal, and protection under the Convention Against Torture (CAT).

An Immigration Judge concluded that Joe was removable as charged and that he did not merit a favorable exercise of discretion as to his requests for adjustment of status and a waiver of inadmissibility under § 1182(h).[1] In addition, the IJ found that Joe's aggravated felony conviction rendered him ineligible for asylum. Although Joe was still eligible for withholding of removal and CAT protection, the IJ denied the application for

---

[1] With respect to the request for a waiver of inadmissibility, the IJ also concluded that Joe failed to establish the requisite hardship to his relatives.

those forms of relief.

The Board of Immigration Appeals dismissed Joe's appeal. The Board rejected Joe's challenge to his removability, which was based in part on an argument the Government failed to establish that the losses to the victim exceeded $10,000. Further, the Board agreed that Joe did not merit a favorable exercise of discretion with respect to his requests for adjustment of status and a waiver of inadmissibility. In addition, the Board noted that Joe did not challenge the denial of asylum and withholding of removal. Finally, the Board found no error in the denial of CAT protection, explaining that country conditions in Liberia had significantly changed since Joe received asylum and emphasizing that Joe safely lived in Liberia from 2013 to 2017. Joe filed a pro se petition for review.[2]

We begin by noting that we lack jurisdiction to review several aspects of the agencies' decisions. Because Joe did not challenge the denial of asylum and withholding of removal on appeal to the Board, we lack jurisdiction to consider those issues. See 8 U.S.C. § 1252(d)(1); Castro v. Att'y Gen., 671 F.3d 356, 365 (3d Cir. 2012) ("A petitioner's failure to exhaust an issue by presenting it to the BIA deprives us of jurisdiction to consider that issue."). We also lack jurisdiction to review the discretionary denial of adjustment of status and a waiver of inadmissibility. See Zheng v. Gonzales, 422 F.3d 98, 111 (3d Cir. 2005) (stating that 8 U.S.C. § 1252(a)(2)(B)(i) "plainly

---

[2] Joe contends that the BIA erred by failing to provide review by a three-member panel. See Purveegiin v. Gonzales, 448 F.3d 684, 692 (3d Cir. 2006) (BIA's discretion to employ single-member review is subject to judicial review). But he failed to identify any basis upon which such review would have been warranted. See 8 C.F.R. § 1003.1(e)(6) (describing standards for assignment to a three-member panel).

3

forecloses review of the Attorney General's exercise of discretion in granting adjustment of status in individual cases"); Cospito v. Att'y Gen., 539 F.3d 166, 170 (3d Cir. 2008) (holding that "our jurisdiction does not extend to an agency's factual and discretionary determinations underlying the denial of waivers based on an analysis involving extreme hardship"). Although we retain jurisdiction under § 1252(a)(2)(D) to review colorable constitutional claims and questions of law, see Guerrero-Lasprilla v. Barr, 140 S. Ct. 1062, 1069 (2020) (holding that the phrase "questions of law" includes the application of a legal standard to undisputed or established facts), Joe's brief does not raise any such challenges to the discretionary decisions. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that claims were forfeited where appellant failed to raise them in her opening brief).

We do have jurisdiction, however, to review constitutional, legal, and factual challenges to the denial of CAT relief. See Nasrallah v. Barr, -- U.S. --, 140 S. Ct. 1683, 1687-88, 1694 (2020) (holding that the jurisdiction-stripping provisions relating to removal for criminal offenses do not affect judicial review of a CAT claim). The CAT prevents the United States government from removing an alien to a country where torture will occur. See 8 C.F.R. § 1208.16. Torture is defined as the intentional infliction of severe pain or suffering "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Here, the IJ concluded, and the BIA agreed, that Joe did not show that anything rising to the level of torture would happen to him upon returning to Liberia, in part because he had not shown that he had been tortured in the past or that he faces threats particularized to

4

him. Although Joe qualified for asylum in 2002, when Liberia was in the midst of a civil war, country conditions have changed. The war ended in 2003 and the country held generally free and fair elections in 2017. The record further indicated that the former president, Charles Taylor, had been convicted of crimes against humanity and that the government was taking steps to alleviate corruption.[3] Joe claimed that he will be targeted in Liberia as a deportee and because of the political associations that forced him to leave the first time, noting that some individuals from the previous regime remain in the government. Notably, however, Joe lived in Liberia from 2013 to 2017 without experiencing significant harm.[4] Under these circumstances, we conclude that the Board properly denied Joe's request for relief under the CAT.

We also have jurisdiction to review the Board's conclusion that Joe is removable as an alien convicted of an aggravated felony. Quinteros v. Att'y Gen., 945 F.3d 772, 781 (3d Cir. 2019). The definition of "aggravated felony" includes an offense that "involves fraud or deceit in which the loss to the victim or victims exceeds $10,000." § 1101(a)(43)(M)(i). There is no dispute that Joe's conviction under 26 U.S.C. § 7206(2) involves deceit. See Kawashima v. Holder, 565 U.S. 478, 483-84 (2012) (explaining that

---

[3] The IJ acknowledged that although Taylor's ex-wife was Liberia's vice president, the evidence indicated that she had disavowed all connections to her ex-husband's regime.

[4] During that time, Joe described two incidents that have caused him to believe that he will be tortured if removed to Liberia. On one occasion, individuals in civilian clothes took him to a police station. The individuals asked him for money and kept him at the station for 16 hours, without providing him with food or water. The second incident occurred when an official detained Joe for 45 minutes, asked Joe for money, and warned Joe that he would "get him" when someone else was in power.

although § 7206(2) does not expressly include "fraud" or "deceit" as an element, a conviction under that statute necessarily contemplates deceitful conduct in assisting the making of a materially false statement as to the correctness of a tax return).

But the Board erred in concluding that the Government proved by clear and convincing evidence that Joe's offense of conviction resulted in a loss to the victim that exceeded $10,000. See Singh v. Att'y Gen., 677 F.3d 503, 512 (3d Cir. 2012). We follow a "circumstance-specific" approach to assess if an offense meets the required loss under § 1101(a)(43)(M)(i). See Nijhawan v. Holder, 557 U.S. 29, 34 (2009). Under that approach, we may consider "the indictment, judgment, presentence investigation report, and any other sentencing-related material that sheds light on [Joe's] conduct." Rad v. Att'y Gen., 983 F.3d 651, 658-59 (3d Cir. 2020) (internal quotation marks and citation omitted). We have noted that "the plain and unambiguous language of the statute … predicates removal on a *convicted* offense resulting in losses greater than $10,000." See Alaka v. Att'y Gen., 456 F.3d 88, 106-07 (3d Cir. 2006).

Here, the losses to the United States Government resulted when Joe, who ran a tax preparation service company, claimed inflated or fictitious unreimbursed employee expenses on his clients' returns. To determine the amount of the losses, the IJ relied solely on the presentence investigation report (PSR). The PSR stated that the "total loss to the IRS resulting from the charged offenses and relevant conduct was $145,951.00." (Administrative Record, 917.) It is not clear, though, what portion of that loss amount is tethered to the counts of conviction and what portion is tethered to "unconvicted offenses." See Chiao Fang Ku v. Att'y Gen., 912 F.3d 133, 142 (3d Cir. 2019)

6

(explaining that § 1101(a)(43)(M)(i) "foreclose[s] inclusion of losses stemming from unconvicted offenses"). Notably, Joe was not convicted of all the "charged offenses," (A.R. 851-52), and "relevant conduct" may include uncharged conduct, beyond the offense of conviction. See United States v. Pollard, 986 F.2d 44 (3d Cir. 1993). And, although the PSR relies on the $145,951 loss figure for purposes of calculating Joe's base offense level, we have explained that loss determinations under the Sentencing Guidelines differ from those under the Immigration and Nationality Act.[5] See Rad, 983 F.3d at 666-68.

For the foregoing reasons, we will grant the petition for review in part, dismiss it in part, deny it in part, and remand the matter for further proceedings consistent with this opinion.

---

[5] The PSR also included a chart that identified each of the 15 false tax return counts of the indictment, listed the filers' initials, and indicated the tax years and dates that the returns were filed. (A.R. 917.) The chart contained no information on tax losses. Immediately below that chart, under the heading "Relevant Conduct and Total Tax Loss," the PSR stated that "Joe and [his co-defendant] caused an additional tax loss of $88,251.00 from the filing of 17 false tax returns from 2008 to 2010, which followed the same pattern as previously described." (Id.) Again, however, it is not clear whether that loss is attributable to the 11 counts of false tax return preparation of which Joe was convicted. See Alaka, 456 F.3d at 106-07.

7