**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 22-1800
_____

ANTONIO DELVIN MONTES FUNEZ,
                                                    Petitioner

v.

ATTORNEY GENERAL UNITED STATES OF AMERICA
_____

On Petition for Review of an Order of the
Board of Immigration Appeals
(Agency No. A216-652-030)
Immigration Judge: Pallavi S. Shirole
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 3, 2022

Before:  RESTREPO, RENDELL, and FUENTES, <u>Circuit Judges</u>

(Opinion filed October 4, 2022)
_____

OPINION[*]
_____

_____

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not
constitute binding precedent.

PER CURIAM

Antonio Delvin Montes Funez, proceeding pro se, petitions for review of a final order of removal issued by the Board of Immigration Appeals ("BIA"). For the reasons stated below, we will deny Montes Funez's petition.

I.

Montes Funez is a citizen of Honduras who entered the United States in 2021. Shortly after his entry, the Department of Homeland Security charged him as removable for being present in the United States without having been admitted or paroled. See 8 U.S.C. § 1182(a)(6)(A)(i). Montes Funez, through counsel, conceded that charge and applied for asylum, withholding of removal, and protection under the Convention Against Torture ("CAT"). At his hearing, Montes Funez testified that three gang members made threats and demands for money, many of which he complied with, on several occasions, and in two different locations in Honduras, in 2020 and 2021. He filed a police report regarding the gang members' threats and actions in February 2021, and nothing happened afterward. Montes Funez left Honduras the following month.

At the end of the hearing, the Immigration Judge ("IJ") denied Montes Funez's applications for relief, concluding that he failed to demonstrate eligibility for asylum, withholding of removal, or relief under the CAT. The BIA affirmed the IJ's decision. Montes Funez filed a timely petition for review.

2

II.

We have jurisdiction over Montes Funez's petition for review pursuant to 8 U.S.C. § 1252(a)(1). We review legal conclusions de novo, Singh v. Att'y Gen., 677 F.3d 503, 508 (3d Cir. 2012), and we review the agency's factual findings under the substantial-evidence standard pursuant to which such findings "are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary," Nasrallah v. Barr, 140 S. Ct. 1683, 1692 (2020) (citation and internal quotation marks omitted); see Thayalan v. Att'y Gen., 997 F.3d 132, 137 (3d Cir. 2021).

III.

Asylum and Withholding of Removal

To succeed on his asylum claim, Montes Funez was required to show that he is "unable or unwilling to return to" Honduras because of past persecution or a well-founded fear of future persecution, on account of a protected ground— "race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42). A petitioner must show that the protected ground "was or will be at least one central reason for persecuting [him]," 8 U.S.C. § 1158(b)(1)(B)(i), which this Court has interpreted to mean that the protected ground "must be an essential or principal reason for the persecution." Gonzalez-Posadas v. Att'y Gen., 781 F.3d 677, 685 (3d Cir. 2015). Because the standard for withholding is higher than that for asylum, an

3

application that does not establish asylum eligibility necessarily fails to make the required showing for withholding.  Blanco v. Att'y Gen., 967 F.3d 304, 310 (3d Cir. 2020).

The BIA concluded that, even if Montes Funez's proposed social group of "Honduran males" was cognizable for asylum purposes, Montes Funez failed to establish a sufficient nexus between the harm that he experienced or fears in Honduras and his membership in that group or any other protected ground.  Montes Funez does not point to any evidence that undermines this conclusion—rather, he focuses his opening brief largely on his claim that the gang members' threats amounted to persecution.  Even if a challenge to the agency's nexus conclusion has not been forfeited, see M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020), and assuming the threats constituted persecution or created a well-founded fear of future persecution, substantial evidence supports the conclusion that the gang members' actions were based on the desire for monetary gain, and not on any protected ground.  Indeed, Montes Funez's testimony demonstrated that the gang members consistently approached him for money, and he repeatedly provided it.  See Thayalan, 997 F.3d at 144 (concluding that a non-citizen "targeted out of a simple desire for money has not experienced persecution on account of a ground protected by the INA"); Shehu v. Att'y Gen., 482 F.3d 652, 657 (3d Cir. 2007) (upholding agency determination that gang members' pursuit of asylum applicant out of a "bare desire for money" was not motivated by protected ground).

4

Montes Funez contends that, in evaluating his asylum claim, the IJ failed to consider that the gang members also asked him to join them because of his "innate characteristics," such as the fact that he is "a very social person, . . . has many friends, and . . . went to church," and that he was threatened when he told the gang members that he could not join them because he was Christian.  Appellant's Br. 16-17, ECF No. 10. Montes Funez raised a similar argument before the BIA, contending that the IJ should have considered whether he was persecuted on account of his religion.  However, the BIA refused to consider this issue on appeal, noting that Montes Funez did not raise his religion as a proposed protected ground, and that the IJ did not err by failing to recognize it based on Montes Funez's limited testimony on the issue.  See In re W-Y-C- & H-O-B-, 27 I. & N. Dec. 189, 191 (BIA 2018) (noting that "an applicant for asylum or withholding of removal must 'clearly indicate' on the record before the Immigration Judge 'what enumerated ground(s) she is relying upon in making her claim'" (citation to quoted case omitted)).  The BIA did not err in so concluding, as Montes Funez did not raise his religion as a proposed protected ground in his counseled asylum application, nor did his counsel raise this argument during the hearing before the IJ.  See A.R. at 125, 241.  And insofar as Montes Funez contends that the gang members' effort to recruit him undermined the agency's conclusion that he was targeted for monetary gain, we cannot conclude that his brief testimony regarding a single instance in which the gang members asked him to join them compels a conclusion different from that reached by the agency.

5

Convention Against Torture

The determination as to whether Montes Funez met his burden to obtain CAT relief involves the two-fold inquiry set forth in Myrie v. Attorney General, 855 F.3d 509, 516 (3d Cir. 2017): (1) whether "it is more likely than not [that he] would be tortured if removed"; and (2) "whether public officials will acquiesce in the likely treatment." Quinteros v. Att'y Gen., 945 F.3d 772, 786 (3d Cir. 2019) (citation and internal quotation marks omitted).  In evaluating the first part of this standard, "the IJ must ask (1) what is likely to happen to the [applicant] if removed and (2) whether what is likely to happen amounts to torture."  Guzman Orellana v. Att'y Gen., 956 F.3d 171, 181 (3d Cir. 2020). As for the second prong, the "the IJ must ask (1) how public officials will likely act in response to the harm the petitioner fears and (2) whether the likely response from public officials qualifies as acquiescence."  Id.  For each two-part test, the first inquiry is factual, while the second is legal.  Id.

Montes Funez contends that the agency (1) failed to determine what would likely happen to him if he were removed to Honduras and whether that would amount to torture, and (2) erred in its analysis of acquiescence because it did not acknowledge his contention that the police never took steps to investigate his complaint.  Even assuming the agency erred in its analysis of the acquiescence prong, however, Montes Funez failed to demonstrate that he satisfied the first Myrie prong.  Contrary to Montes Funez's assertion, the IJ did make a finding about what would likely happen if Montes Funez

6

returns to Honduras. Specifically, the IJ concluded—and the BIA agreed—that Montes Funez may be subject to extortion if removed, but that such extortion would not rise to the level of torture. We cannot say that the record compels a conclusion different from that reached by the agency regarding what is likely to happen to Montes Funez if he is removed, and extortion attempts alone generally do not rise to the level of torture. See K.Y. v. U.S. Att'y Gen., 43 F.4th 1175, 1182 (11th Cir. 2022) (per curiam); Molina-Avila v. Sessions, 907 F.3d 977, 983 (7th Cir. 2018). Although Montes Funez described being fearful of the gang members and seeing one of them carrying a weapon on his waist, Montes Funez's description of their threats was relatively vague, and it does not appear that he or his family was ever threatened with a weapon or physically harmed. Cf. Blanco, 967 F.3d at 312-13 (explaining that unfulfilled threats must be "concrete and menacing" to constitute persecution); see also Tun v. INS, 445 F.3d 554, 567 (2d Cir. 2006) ("[T]orture requires proof of something more severe than the kind of treatment that would suffice to prove persecution."); 8 C.F.R. § 1208.18(a)(4) (describing circumstances in which mental pain and suffering may constitute torture, none of which appears to be present here). Therefore, the agency reasonably concluded that Montes Funez failed to establish eligibility for protection under the CAT.

Accordingly, we will deny the petition for review.