**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-1201
_____

JOHN HART,
                              Appellant

v.

STEVEN PARKINSON, INDIVIDUALLY AND IN HIS OFFICIAL
CAPACITY AS A DETECTIVE FOR THE CITY OF PHILADELPHIA
POLICE DEPARTMENT; KATHRYN GORDON, INDIVIDUALLY
AND IN HER OFFICIAL CAPACITY AS A DETECTIVE FOR THE
CITY OF PHILADELPHIA POLICE DEPARTMENT; MICHAEL SANDER,
INDIVIDUALLY AND IN HIS OFFICIAL CAPACITY AS AN AGENT
FOR THE PENNSYLVANIA BOARD OF PROBATION AND PAROLE
_____

On Appeal from the United States District Court
for the Eastern District of Pennsylvania
(D.C. Civil Action No. 2:13-cv-06662)
District Judge:  Honorable Joshua D. Wolson
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
October 4, 2024
Before:  SHWARTZ, RESTREPO, and FREEMAN, <u>Circuit</u> <u>Judges</u>

(Opinion filed: October 31, 2024)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

**PER CURIAM**

In 2011, Appellant John Hart briefly dated Erika von Tiehl, then a local Philadelphia news anchor. Shortly after von Tiehl ended the relationship,

> [she] received a message from Facebook stating that she was trying to change her password. Although she had not been trying to change her password, she thought nothing of it. After that[,] . . . [she] began to receive abusive text messages threatening to end her career by releasing negative gossip to the press and referencing private information she had shared with [Hart] while they were dating. Her telephone numbers were changed [without her permission], and her cable was shut off three (3) times by someone calling the provider and terminating service. [Von Tiehl] also began receiving multiple telephone calls from blocked numbers and when she would answer, the caller would hang up. This continued for many days and the calls were always from a blocked number.

Commonwealth v. Hart, No. 3284 EDA 2016, 2018 WL 2307381, at *1 (Pa. Super. Ct. May 22, 2018) (second and fourth alterations in original) (quoting trial court's opinion in Hart's criminal case).

Von Tiehl reported these incidents to the Philadelphia Police Department ("PPD"). The case was assigned to Detective Steven Parkinson, who obtained from von Tiehl's telephone provider "[t]he recording . . . of a man attempting to disguise his voice as that of a woman and trying to have [von Tiehl's] telephone service cancelled." Id. Both von Tiehl and Hart's parole officer, Michael Sander, recognized the voice as that of Hart.

Thereafter, Parkinson, in coordination with the Haverford Township Police Department, obtained and executed a search warrant for Hart's home in Havertown.

2

During that search, the police recovered two computers and an iPhone. Parkinson then

obtained search warrants for those three electronic devices. Those warrants covered

"[r]ecords or information related to identity theft, stalking and harassment electronically

stored within [those devices]." Dist. Ct. Dkt. No. 62-8, at 2-4. The affidavit of probable

cause in support of those three warrants stated as follows:

> Above items w[ere] recovered from 2513 Prescott St[.]
> Haverford Twp[.] after Philadelphia Police and Haverford
> Twp[.] police served a search warrant for items involved with
> identity theft and harassment/stalking. Arrested was offender
> John Hart. John Hart would call complainant's cell phone
> company and cable company pretending to be the complainant,
> in an attempt to change or shut off service.

Id.

Hart was subsequently charged in the Philadelphia County Court of Common

Pleas with stalking, harassment, and other offenses. While that criminal case was

pending, Hart filed a pro se civil-rights action in the District Court against Parkinson and

several other defendants. The District Court then stayed that civil case pending the

resolution of the criminal case.

A jury found Hart guilty of stalking and harassment, and the trial court sentenced

him to 2.5 to 5 years in prison.[1] Hart's efforts to challenge that judgment in state court

and via federal habeas review were unsuccessful. Thereafter, in 2022, the District Court

---

[1] The jury found Hart not guilty of identity theft, unlawful use of a computer, disruption
of service, and possessing an instrument of crime.

lifted the stay in Hart's civil-rights case, and he filed an amended complaint. Hart brought claims against Parkinson, Sander, and PPD Detective Kathryn Gordon, who participated in the search of Hart's home and was conducting a parallel investigation stemming from allegations that Hart had stalked and harassed another ex-girlfriend.

Parkinson and Gordon (hereinafter collectively referred to as "the Detectives") jointly moved to dismiss the amended complaint pursuant to Federal Rule of Civil Procedure 12(b)(6).[2] In February 2023, the District Court granted that motion in part and denied it in part. Specifically, the District Court dismissed all but one of Hart's claims as barred by the favorable-termination rule set forth in Heck v. Humphrey, 512 U.S. 477 (1994).[3] As for the remaining claim, a Fourth Amendment claim against Parkinson and Gordon related to the search of Hart's electronic devices, the District Court concluded that this claim was not Heck-barred because Hart "alleges those searches did not yield anything useful in the police investigation." Dist. Ct. Dkt. No. 41, at 4.

The remaining claim then proceeded to the discovery stage, during which Hart deposed both Parkinson and Gordon. Thereafter, both the Detectives and Hart moved for summary judgment. In January 2024, the District Court granted the Detectives' summary-judgment motion and denied Hart's cross-motion as moot. In doing so, the

---

[2] Defendant Sander never entered an appearance in this case, and it is unclear whether he was ever properly served.

[3] That dismissal included the lone claim against Sander. See Dist. Ct. Dkt. No. 41, at 4.

4

District Court construed the parties' summary-judgment briefing as "clarify[ing]" that Hart's remaining claim was arguing that the Detectives "(1) used an overbroad list of search terms in searching his devices," and (2) "searched his devices without considering the possibility that they would tread on privileged material." Dist. Ct. Dkt. No. 66, at 3-4. The District Court concluded that the first argument was barred by the doctrine of collateral estoppel because the trial court in Hart's criminal case had rejected that argument when it was raised in a motion to suppress. As for the second argument, the District Court concluded that it was barred by the doctrine of qualified immunity. Hart timely appealed.

We have jurisdiction under 28 U.S.C. § 1291. We review the resolution of cross-motions for summary judgment de novo.[4] See Spivack v. City of Philadelphia, 109 F.4th 158, 165 (3d Cir. 2024). We may affirm on any basis supported by the record. See Talley v. Clark, 111 F.4th 255, 261 (3d Cir. 2024).

Hart makes three arguments on appeal. He contends that the District Court "misapprehend[ed]" the claim that survived the Detectives' motion to dismiss. See 3d Cir. Dkt. No. 8-2, at 10. According to Hart, he alleged, among other things, that the search warrants that Detective Parkinson obtained for his electronic devices were

---

[4] We do not consider issues that Hart does not raise. See M.S. by & through Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (explaining that a party forfeits any argument that he does not raise in his opening brief).

overbroad because they failed to limit the search to evidence related to the allegations made by von Tiehl.[5] See id. at 25 & 26 ("Because there was no basis provided in the Affidavit of Probable Cause for concluding that [Hart] engaged in this behavior with anyone [other than von Tiehl], investigators obtained an overly broad search warrant."). Hart also argues that the District Court erred in relying on collateral estoppel because the issue of whether the search warrants were overbroad was never previously litigated. See id. at 35-41. And he states that the District Court erred in granting qualified immunity to the Detectives because they were not entitled to it on the claims that the District Court did not properly understand.

We liberally construe Hart's brief as presenting a colorable argument that the District Court should have construed his remaining claim as including a challenge to the breadth of the electronic-device warrants. See Talley v. Wetzel, 15 F.4th 275, 286 n.7 (3d Cir. 2021). However, any error was harmless. Assuming that the District Court erred in failing to construe Hart's claim as including the overbreadth challenge he presses on appeal, and further assuming that Hart can show that the warrants were indeed overbroad, the Detectives are still entitled to qualified immunity.[6]

---

[5] He describes his allegations as also including claims of a warrantless search through the provision of 40 terms to the forensic examiner, see 3d Cir. Dkt. No. 8-2 at 28 & 29-30, and improper search of privileged files on his electronic devices, see id. at 32-35.

[6] In light of this conclusion, we need not reach his argument about collateral estoppel as it relates to this claim. To the extent that Hart challenges the District Court's collateral estoppel ruling on other aspects of his Fourth Amendment claims, we agree with the

Officials are protected by qualified immunity when they act in an objectively reasonable manner, as measured against the legal rules that were clearly established when they acted.  See Messerschmidt v. Millender, 565 U.S. 535, 546 (2012).  In this case, the fact that a neutral magistrate issued the warrants is a clear indication that the Detectives acted in an objectively reasonable manner.  See id.  But the inquiry does not end there.  We must also ask if it is obvious that no reasonably competent detective would have concluded that the warrants should have issued.  See id. at 547.  And, under the circumstances here, we cannot say that is the case.  See id. (explaining that the threshold to overcome the "shield of immunity" of the warrant is "a high one, and it should be").

The warrants arguably could be read to authorize the police to search Hart's electronic devices for evidence of any potential instance of identity theft/stalking/harassment against any victim.  See Dist. Ct. Dkt. No. 62-8, at 2-4 (authorizing the search of "[r]ecords or information related to identity theft, stalking and harassment electronically stored within [those devices]").  However, a reasonably

_____

District Court's ruling about the list of search terms given to the forensic examiner.  As the District Court explained, the doctrine of collateral estoppel applied because the Court of Common Pleas had ruled against Hart on his same challenge to the constitutionality of the search terms supplied by the Detectives after Hart had a full and fair opportunity to litigate the matter.  See Dist. Ct. Dkt. No. 66 at 5-7; Dist. Ct. Dkt. No. 62, Ex. 11 at 24-25; see also Migra v. Warren City Sch. Dist. Bd. of Educ., 465 U.S. 75, 81 (1984) (explaining that a federal court must give a state-court judgment the same preclusive effect as under the law of the state in which the judgment was rendered); Rue v. K-Mart Corp., 713 A.2d 82, 84 (Pa. 1998) (setting forth the elements of the doctrine of collateral estoppel under Pennsylvania law).

7

competent detective could have understood them in the context of the affidavit of probable cause, which described the recovery of the devices in relation to the specific investigation into identity theft and harassment/stalking of von Tiehl. See Dist. Ct. Dkt. No. 62-8, at 2-4. "[I]t would not have been 'entirely unreasonable' . . . to believe that the facts set out in the affidavit established a fair probability that [the evidence sought through the warrant] would aid in the prosecution of [Hart] for the criminal acts at issue." Messerschmidt, 565 U.S. at 553. Any error in the warrants, in the context of the affidavits, would not be a "glaring deficiency" obvious in a "simple glance." Id. at 555-56. Accordingly, qualified immunity protects the Detectives from liability relating to Hart's claims about the warrants.

Likewise, the Detectives are entitled to qualified immunity in relation to a search of possibly privileged files on Hart's devices. Based on the report of another officer, Detective Parkinson had reason to suspect that Hart had used forged or doctored legal documents to engage in identity theft. Accordingly, at the time of the search, it was reasonable for him to look for evidence, including those sorts of documents, that could support that crime. Cf. United States v. Stabile, 633 F.3d 219, 234 & 239 (3d Cir. 2011) (discussing the search of hard drives and the searches of "large collections of items, such as papers" where some "innocuous documents will be examined, at least cursorily, in order to determine whether they are in fact, among those … authorized to be seized").

For these reasons, we will affirm the District Court's judgment.

8