**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 24-3107
_____

PROFIT POINT TAX TECHNOLOGIES, INC.

v.

DPAD GROUP, LLP; JOHN MANNING; DANIEL STEELE

v.

PROFIT POINT TAX TECHNOLOGIES, INC.; PATRICK SWEET

Patrick Sweet,
                              Appellant
_____

On Appeal from the United States District Court
for the Western District of Pennsylvania
(D.C. Civil Action No. 2:19-cv-00698)
District Judge:  Honorable William S. Stickman IV
_____

Submitted Pursuant to Third Circuit LAR 34.1(a)
August 21, 2025

Before:  SHWARTZ, MONTGOMERY-REEVES, and SCIRICA, <u>Circuit Judges</u>

(Opinion filed: August 22, 2025)
_____

OPINION[*]
_____

---

[*] This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

PER CURIAM

Profit Point Tax Technologies, Inc. ("PPTT"), is a business that help companies calculate income tax incentives for federal income tax purposes. John Manning and Daniel Steele are tax professionals who worked for PPTT as independent contractors before forming their own tax services company, the DPAD Group, LLP ("DPAD"). In 2019, PPTT, through counsel, sued Manning, Steele, and DPAD, raising, in the first amended complaint, breach of contract and tort claims based on allegations that the defendants used PPTT's confidential information and other resources to solicit its clients and take its business. The defendants filed countersuit, bringing claims against PPTT and its sole shareholder, Patrick Sweet, relating to allegedly unpaid fees on tax-services projects.[1]

In the several years of litigation that followed, some claims were dismissed, and many discovery disputes were resolved. In one early motion, Manning, Steele, and DPAD sought a protective order related to discovery requests made by PPTT. The Magistrate Judge to whom the motion had been referred granted in part and denied in part the motion. In her ruling, she provided notice to the parties that they could appeal the decision to the District Judge (and warned them that a failure to appeal constitutes a waiver of any appellate rights). Manning, Steele, and DPAD filed objections to appeal to the District Judge, but neither PPTT nor Sweet challenged the ruling, which the District

---

[1] All counterclaims were brought against both PPTT and Sweet except Count II, which was asserted against PPTT only.

2

Court later adopted.  A Special Master was later appointed to handle discovery dispute disputes.  Among other things, he recommended denying a motion that PPTT had filed to compel the continuation of Manning's and Steele's depositions.  PPTT did not object to the recommendation (and neither did Sweet), and the District Court adopted it.

The parties filed cross-motions for summary judgment, which the District Court awarded to Manning, Steele, and DPAD on the claims in the first amended complaint. The District Court denied the motions for judgment related to the counterclaims, adopting a Magistrate Judge report and recommendation over PPTT's and Sweet's objections and stating that two of those claims would proceed to trial.[2] [3]

Additionally, PPTT and Sweet sought sanctions and judgment against the defendants for what they described as spoliation, interference with the litigation process, and failure to comply with court orders.  The District Court, adopting the Special Master's report and recommendation over PPTT's objections, denied Sweet and PPTT's motion.

The parties then entered into what became protracted settlement discussions, memorializing terms in a November 2023 email but continuing to discuss how Manning and Steele would disavow participation in alleged whistleblower claims.  In June 2024,

---

[2] The District Court concluded that two other counterclaims were moot.

[3] The District Court entered a partial judgment regarding the rulings on the claims and counterclaims, see ECF No. 313, and PPTT filed an appeal that was dismissed for lack of jurisdiction.  See C.A. No. 23-1575, order entered June 5, 2024.

Manning, Steele, and DPAD filed a motion to enforce the settlement, as they understood it to be set forth in the terms in the email, and sought attorneys' fees and costs. PPTT and Sweet opposed the motion. After holding a hearing, the District Court granted the motion to enforce the settlement and denied the request for fees and costs.

Sweet filed pro se a notice of appeal.[4] In his brief, he mainly challenges two orders. He contends that the District Court erred when it adopted the Special Master's report and denied his request for sanctions, including a judgment, based on what he believed to be violations in the discovery process. He also argues that the District Court erred in enforcing the settlement agreement.

We have jurisdiction pursuant to 28 U.S.C. § 1291.[5] We turn first to the challenge to the order enforcing the settlement agreement. In the District Court, the parties agreed that the November 2023 email memorialized the material terms of the settlement, see, e.g. ECF Nos. 369 at 2; 373 at 4 & Ex. A; 374; & 386 at 2, and they narrowed the issue

---

[4] He subsequently amended it to specify that he wished to challenge the denial of the motion for sanctions, the order granting summary judgment in favor of Manning, Steele, and DPAD on the claims in the first amended complaint, the order denying summary judgment in favor of him and PPTT on the counterclaims, the partial judgment order entered after the rulings on summary judgment, and the order granting the motion to enforce the settlement agreement.

[5] However, we do not review any issues that Sweet did not raise in his brief; his mention of other orders in his notice of appeal or amended notice of appeal is not sufficient to put them before us. See M.S. ex rel. Hall v. Susquehanna Twp. Sch. Dist., 969 F.3d 120, 124 n.2 (3d Cir. 2020) (holding that the appellant forfeited claims by failing to raise them in the opening brief).

4

down to whether Material Term No. 4, "Attestation by Manning and Steele related to whistleblower claims," ECF No. 374, required affidavits from Manning and Steele, see ECF No. 384 at 2, & 386 at 3-4.[6] Accordingly, the parties presented, and the District Court answered, a legal question about how their agreement should be constructed. Accordingly, our review of that ruling is plenary. See Coltec Indus., Inc. v. Hobgood, 280 F.3d 262, 269 (3d Cir. 2002).

Upon review, we agree with the District Court's analysis and its decision to enforce the settlement because the declarations that Manning and Steele provided in this case served as the required "attestations" under Material Term 4.[7] More specifically, with their supplemental brief regarding enforcement of the settlement, Manning and Steele each submitted a declaration signed under penalty of perjury and pursuant to 28

---

[6] In a reply brief, PPTT and Sweet backtracked, calling Material Term 4 "an undetermined matter," and also argued that the declarations did not address "the disclosure of confidential information for the purposes of pursuing a whistleblower claim" or include the content that they agreed to. ECF No. 397 at 2. The District Court, looking at Material Term 4, which, like the rest of the terms, had been drafted by PPTT and Sweet's counsel, saw no mention of the disclosure of confidential information, so it focused "*only* on how the actual terms of Material Term No. 4 may be satisfied." ECF No. 398 at 5. In light of the parties' repeated earlier reports to the District Court that they had reached a settlement and their agreement (before Manning and Steele submitted their declarations) that the November email memorialized its material terms (one of which they requested the District Court to interpret), we will do the same.

[7] We do not address Sweet's argument that the settlement cannot be enforced against him as an individual because the November 2023 email did not identify him as a party to it. He forfeited that argument by not presenting it to the District Court. See Simko v. U.S. Steel Corp., 992 F.3d 198, 205 (3d Cir. 2021) ("[A]rguments raised for the first time on appeal are not properly preserved for appellate review.").

5

U.S.C. § 1746 disavowing the filing of any whistleblower claim, past, present, or future, related to any PPTT client or prospective client and any awareness of any such filing. See ECF Nos. 384-1 & 384-2.

Such documents prepared pursuant to § 1746 are typically considered equivalents to affidavits in federal court proceedings. See § 1746; Nissho-Iwai Am. Corp. v. Kline, 845 F.2d 1300, 1306 (5th Cir. 1988) (explaining that unsworn declarations may substitute for an affidavit under §1746 when the statement is made under penalty of perjury and verified as true and correct). And the declarations satisfy the ordinary meaning of "attestation," which was not defined by the parties in their agreement. See generally Sanford Inv. Co. v. Ahlstrom Mach. Holdings, Inc., 198 F.3d 415, 421, 422 (3d Cir. 1999) (describing how a court interprets a contract); Lamb v. CVS Pharmacy LLC, 704 F. Supp. 3d 606, 615 (E.D. Pa. 2023) (same); see also ATTEST, Black's Law Dictionary (12th ed. 2024) (listing "attestation" as a derivative of "attest," which means "[t]o affirm to be true or genuine; to authenticate by signing as a witness");[8] Attestation, Merriam-Webster Dictionary (11th ed. 2023); Attestation, Oxford English Dictionary (3d ed.

---

[8] We note that not everyone makes the distinction that Sweet does between a sworn declaration and an affidavit. See AFFIDAVIT, Black's Law Dictionary (12th ed. 2024) (defining affidavit as "[a] voluntary declaration of facts written down and sworn to by a declarant, *usu.* before an officer authorized to administer oaths." (emphasis added).

6

2024).  For these reasons, we agree with the District Court's decision to enforce the settlement.[9]

Finally, we consider the District Court's order denying Smith's motion for sanctions, including a judgment, for alleged discovery violations.  Because Sweet did not raise an objection to the Special Master's recommendation on this motion, we review the

---

[9] We have considered Sweet's argument that the District Court would have reached a different result had two earlier orders not inappropriately limited discovery.  But that does not change the analysis of the terms of the agreement the parties reached.  If the arguments in his brief are construed liberally, Sweet can also be understood as assigning error to the Magistrate Judge's ruling on Manning, Steele, and DPAD's motion for a protective order related to discovery requests made by PPTT, and the District Court's adoption of the Special Master's ruling on PPTT's motion to compel the continuation of Manning's and Steele's depositions.  There is a question whether a challenge to these rulings can be brought by Sweet, who was neither a signatory to either motion nor the party against whom the District Court ruled.  See IPSCO Steel (Ala.), Inc. v. Blaine Constr. Corp., 371 F.3d 150, 155 (3d Cir. 2004) ("Ordinarily, only a party aggrieved by a judgment or order of a district court may exercise the statutory right to appeal therefrom."); cf. Kauffman v. Dreyfus Fund, Inc., 434 F.2d 727, 732 (3d Cir. 1970) ("A stockholder of a corporation does not acquire standing to maintain an action in his own right, as a shareholder, when the alleged injury is inflicted upon the corporation and the only injury to the shareholder is the indirect harm which consists in the diminution in value of his corporate shares resulting from the impairment of corporate assets.").  To the extent that Sweet has standing based on his claim of harm from the orders, our review is only for plain error because he raised no objection to those orders in the District Court.  See E.E.O.C. v. City of Long Branch, 866 F.3d 93, 100 (3d Cir. 2017).  Plain error review is discretionary review used very sparingly in the civil context, and we do not discern any serious and flagrant error that requires correction in this case.  See Fashauer v. N.J. Transit Rail Operations, Inc., 57 F.3d 1269, 1289 (3d Cir. 1995).

District Court's ruling for plain error.[10]  See E.E.O.C., 866 F.3d at 100.  Upon review, we discern none.[11]

For these reasons, we will affirm the District Court's judgment.

---

[10] Because the Special Master used "PPTT" as shorthand for PPTT and Sweet in relation to the adjudication of this motion, we considered whether PPTT's use of the same term in its objections included Sweet in them.  However, a comparison of PPTT and Sweet's joint filing of the motion with the objections filed by PPTT in response to the Special Master's recommendation reveals that Sweet was not a party to the objections.  And Sweet cannot pursue this line of argument (or anything else in this appeal) on behalf of PPTT.  See Simbraw, Inc. v. United States, 367 F.2d 373, 373-74 (3d Cir. 1966) (per curiam).  Additionally, we also do not consider the order as it relates to any allegations about other discovery-related misconduct because Sweet does not discuss anything but his ESI-related spoliation arguments in briefing his challenge to the order.  See M.S. ex rel. Hall, 969 F.3d at 124 n.2.

[11] Sweet argued that judgment should be entered in his favor and against Manning, Steele, and DPAD because of their alleged spoliation of electronically stored information (ESI).  The District Court, adopting the Special Master's recommendation to deny the motion, acknowledged that Sweet referred to documents that he expected would be produced and which he regarded as missing.  However, the District Court concluded that those references, as well as the descriptions from a forensic review, bordered on speculation and did not establish that ESI had been lost.  Sweet maintains that the District Court erred because Steele had disposed of a hard drive in 2018 that he had used to store client files.  However, although Sweet could show, through Steele's representations that he had a hard drive in addition to storing documents and emails on a server, see, e.g., ECF No. 279 at 3, the District Court did not plainly err in agreeing with the Special Master that, among other things, Sweet did not show what ESI was missing or that ESI was irretrievably lost when Steele disposed of a hard drive in 2018.